Argued and submitted September 8, 1997, decision of Court of Appeals affirmed, order of circuit court reversed, and case remanded to circuit court for further proceedings July 24, reconsideration denied September 29, 1998

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JAMES PENNY MEADE, JR.,
*Petitioner on Review.*

(CC 95-1031; CA A90793; SC S44069)

963 P2d 656

Jon S. Henricksen, Gladstone, argued the cause for petitioner on review. With him on the petition was Jon F. Strock, Gladstone.

Douglas Zier, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.**

GILLETTE, J.

Durham, J., dissented and filed an opinion.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

### GILLETTE, J.

In this criminal case, defendant was charged with sodomy and sexual abuse, based on allegations that he had unlawful sexual contact with his girlfriend's eight-year-old daughter. The trial court granted defendant's pretrial motion to suppress certain statements that he made to two Lake Oswego detectives during a police interview. On appeal by the state, the Court of Appeals reversed, holding that the statements were admissible. *State v. Meade*, 146 Or App 202, 933 P2d 355 (1997). We allowed review and now affirm the decision of the Court of Appeals.

Two plainclothes police detectives met defendant upon his arrival at the Portland International Airport after a lengthy international flight. The detectives displayed their badges, assured defendant that his family was fine and that his luggage would be taken care of, and then escorted him to an interview room at the Port of Portland Police Department, a few minutes' drive away from the terminal. Once in the interview room, the detectives advised defendant of his *Miranda* rights, told him that they were investigating allegations that he had touched his girlfriend's daughter inappropriately, and informed him that he would be taken into custody at the conclusion of the interview.

The detectives initially questioned defendant for about an hour, during which time defendant fully and freely answered their questions, even to the point of acknowledging that it was "possible" that he had made sexual contact with the child inadvertently or unconsciously. Eventually, defendant admitted that he "might have" had an erection and touched the girl's bottom, conceding that such an event "could have happened."

At that point, defendant stated that, if he needed a lawyer, he wanted one. The detectives paused but, before they had the opportunity to say anything further, defendant leaned forward in his chair, put up his hands as if to stop the detectives from speaking, and said, "You've talked a lot. I want to say a few things." He then began talking about how he realized that his relationship with the girl's mother was "going down the drain." He complimented the detectives on

the way in which they had handled the investigation, but said that he thought that they wanted him to confess to something that he had not done. One of the detectives responded, "No, I don't want you to confess to something that you didn't do, but I have this investigation and I believe you did it." The detective then resumed questioning defendant and, again, defendant responded fully, making several additional incriminating statements. At the conclusion of the interview, which lasted for about another hour, the detectives arrested defendant.

Defendant was charged with three counts of sodomy in the first degree and three counts of sexual abuse in the first degree, all involving the eight year old. Before trial, defendant moved to suppress all the statements that he had made during the interview. He claimed that he was never advised of his *Miranda* rights, that he was overtired from his trip and, therefore, that he was unable to waive his rights knowingly and intelligently, and that the interview continued improperly after he mentioned his need for a lawyer.

The trial court found that defendant had been advised of his *Miranda* rights and that the statements that he made before he mentioned his need for a lawyer were freely and voluntarily made. However, the court held that defendant's statement to the effect that, if he needed a lawyer, then he wanted one,[1] was an "equivocal" request for counsel and that the police continued questioning after that request but did not limit their questions to an effort to clarify whether defendant desired to have a lawyer present. The trial court concluded that the failure to limit the interrogation in that way warranted suppression of the statements that followed defendant's equivocal request for counsel.

The state appealed. ORS 138.060(3). The Court of Appeals assumed, without deciding, that defendant's statement to the effect that, if he needed a lawyer, then he wanted one, was an equivocal request for counsel but concluded, applying federal standards, that "[defendant's] immediately ensuing unilateral statements to the detectives evinced ' "a

---

[1] The trial court did not make specific findings as to defendant's exact words, but simply paraphrased the statement in this way.

willingness and a desire for a generalized discussion about the investigation,'" and, under the totality of the circumstances, effected a waiver of the right to counsel. * * * Accordingly, subsequent renewal of interrogation did not violate that right." *Meade*, 146 Or App at 206 (citations omitted). For the reasons that follow, we agree.

■ Defendant's right to the assistance of counsel during custodial interrogation arises out of his right against self-incrimination as provided in Article I, section 12, of the Oregon Constitution,[2] and the Fifth Amendment to the United States Constitution.[3] This court has recognized that a level of coercion is inherent in any custodial setting and that a lawyer's presence at a custodial interrogation is one way to ensure the right to be free from compelled self-incrimination. *State v. Sparklin*, 296 Or 85, 89, 672 P2d 1182 (1983). When a defendant chooses to have the advice of counsel before he responds to police questions and the police honor that choice, "the coercive atmosphere of police interrogation is to some degree dispelled." *Ibid.*

■ For that reason, when a suspect in police custody makes an unequivocal request to talk to a lawyer, all police questioning must cease. *State v. Charboneau*, 323 Or 38, 54, 913 P2d 308 (1996); *State v. Montez*, 309 Or 564, 572, 789 P2d 1352 (1990). When the request is equivocal, however, the police may follow up with questions intended to clarify whether the suspect meant to invoke his right to counsel. *Charboneau*, 323 Or at 55-56; *Montez*, 309 Or at 572. In either case, the suspect may thereafter waive the right to have counsel present during that or later interrogations. *Montez*, 309 Or at 572.

■ As did the Court of Appeals, we assume that defendant's reference to a lawyer was an equivocal request for counsel. The state argues that defendant waived the right to counsel immediately after making that reference, when he

---

[2] Article I, section 12, of the Oregon Constitution, provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

[3] The Fifth Amendment to the United States Constitution provides, in part:

"No person shall * * * be compelled in any criminal case to be a witness against himself."

prevented the detectives from speaking, stating "You've talked a lot. I want to say a few things," and then went on to speak about his relationship with the victim's mother, about how the detectives were handling the investigation, and about whether the detectives wanted him to confess to something that he had not done.

We acknowledge at the outset that this case does not present precisely the same factual context as that involved in *Montez* and *Charboneau*. In each of those cases, the suspect's equivocal invocation of the right to counsel was followed by neutral questions from the interviewing officers directed solely at determining whether the suspect was or was not invoking the right to counsel. In the present case, by contrast, the officers were prevented from asking such neutral questions immediately by defendant's choice to launch into his monologue. When the officers did resume taking part in the discussion, their questions were aimed at the merits of the case. This case thus presents a question not addressed by either *Montez* or *Charboneau*: May the interrogating officers' obligation, discussed in those cases, to clarify an equivocal invocation of the right to counsel be obviated, if the suspect thereafter, and without prompting from the officers, initiates further substantive conversation concerning the charge under investigation? For the reasons that follow, we hold that the officers' duty to clarify the suspect's intention may, under certain circumstances, be obviated.

■ This court has not been called on previously to rule on whether or under what circumstances a suspect's initiation of conversation with the police after equivocally invoking the right to counsel constitutes a waiver of that right under the Oregon Constitution. Although unresolved, the question is not difficult. Every case necessarily turns on its own facts, but there is no conflict between *Montez* and *Charboneau* and the idea that a suspect's own actions may, in a given case, eliminate any need for clarification by the officers. The state may show by forms of evidence other than a suspect's responses to clarifying questions from the police that the suspect had the requisite state of mind, *viz.*, was willing to enter into a generalized discussion of the substance of the charges without the assistance of counsel.

Applying the foregoing standard to the facts of this case, we hold that defendant, without prompting from the police, initiated further conversation that evinced a willingness and a desire for a generalized discussion about the investigation. Defendant's physical gestures cut off further questions by the officers. Having asserted control over the conversation, he then chose to reopen the topic of the investigation. The officers had no obligation to inquire further.[4] We agree with the Court of Appeals' conclusion that, on this record, although defendant's statements

> "were not necessarily inculpatory, they pertained directly or indirectly to the substance of the investigation. * * * The tenor and thrust of his statements, from his announcement, 'I want to say a few things,' to his statements denying the allegations, indicated his willingness to talk with the detectives about the accuracy of their investigation against him."

*Meade*, 146 Or App at 210.[5]

■ Having concluded that defendant initiated the conversation with the detectives,[6] we turn to the remaining issue, *viz.*, whether the waiver was knowing and voluntary under the totality of the circumstances. *See Montez*, 309 Or at 572 (suggesting that separate criterion). The Court of Appeals found, as do we, that the following facts are significant: Defendant is highly educated, having earned a doctorate degree in psychology; defendant was advised of his

---

[4] The dissent at bottom differs only with this application of the facts to the law. Close cases reasonably can be expected to produce differences of opinion. That is what has occurred here.

[5] Neither would defendant's claim be well taken under federal law. In *Davis v. United States*, 512 US 452, 461, 114 S Ct 2350, 129 L Ed 2d 362 (1994), the United States Supreme Court held that the Fifth Amendment allows a police officer to continue interrogating a suspect after the suspect knowingly and voluntarily waives his *Miranda* rights until and unless the suspect *clearly* requests a lawyer. Because defendant in this case did not clearly articulate his request for a lawyer, the Fifth Amendment as it presently is interpreted did not preclude the detectives from continuing the interrogation.

[6] Defendant suggests that his statements to the detectives after his mention of a lawyer "only * * * ambiguously 'evince a willingness' to open up a generalized discussion about the investigation," and he invites this court to adopt a rule requiring police officers to ask questions meant to clarify the suspect's intent before resuming interrogation unless it is clear that the suspect desires such a generalized discussion. We disagree that defendant's comments are ambiguous in that regard and, therefore, we decline to consider in the abstract whether such a rule would be necessary.

*Miranda* rights at the beginning of the interview, waived them immediately, and engaged in a lengthy, substantive discussion with the detectives about the case; the trial court found that defendant understood his rights when he waived them initially, that he was alert throughout the interview, and that his statements before the equivocal request for counsel were "the result of free, unconstrained, and informed choice;" and, finally, the period between the time when defendant equivocally invoked his rights and then initiated substantive discussion was very short. Nothing occurred during that period that reasonably could have altered defendant's understanding of his rights.

Based on the foregoing, we conclude that the totality of the circumstances indicates that defendant voluntarily waived his rights against self-incrimination under both the state and federal constitutions. The detectives permissibly resumed the interrogation when defendant finished his monologue. The trial court erred in suppressing defendant's later incriminating statements.[7]

The decision of the Court of Appeals is affirmed. The order of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** dissenting.

I would affirm the trial court's determination that defendant did not intentionally waive his right to counsel before he made the incriminating statements in dispute here. Accordingly, I dissent.

Our nation's debate regarding the decision in *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), is now over thirty years old.[1] *Miranda* is not a

---

[7] The trial court did not base its ruling on any theory that defendant's waiver of his right to counsel was defective in any *factual* respect. Rather, it is clear from reading the court's opinion as a whole that the court's ruling was based solely on the legal conclusion that the police could not, as a matter of law, further interview defendant, after defendant's mention of a lawyer, without first clearing up whether defendant was invoking his right to counsel. Thus, the familiar rule of *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (trial court is presumed to have found facts consonant with its legal ruling) plays no role here.

[1] It cannot be gainsaid that *Miranda* has attracted its share of controversy. One author reports that the *Miranda* opinion "was assailed by police, prosecutors, politicians, and media," was attacked by the administrations of two presidents,

state law decision but this court has relied on that case to determine the content of state law regarding police interrogations. For example, in determining what procedural safeguards are necessary to protect the right of a person suspected of crime, under Article I, section 12, of the Oregon Constitution, not to be compelled to testify against himself in a criminal prosecution, this court has held repeatedly that *Miranda* warnings are the procedural mechanism by which police officers must effectuate that state constitutional provision. *See, e.g., State v. Sparklin*, 296 Or 85, 88, 672 P2d 1182 (1983); *State v. Mains*, 295 Or 640, 645, 669 P2d 1112 (1983). As a result, settled state law requires police officers to deliver familiar warnings to a suspect at the commencement of an interrogation, and to scrupulously honor that person's request for a lawyer, expressed at *any* time during the interrogation. "[W]e require the police to inform a detained person that he may terminate questioning *at any time* and that he may have an attorney to advise him before he speaks." *Sparklin*, 296 Or at 89 (emphasis added).

In *State v. Kell*, 303 Or 89, 96, 734 P2d 334 (1987), this court, quoting the following passage of *Miranda* with

---

was cited in Congress as a justification for impeaching Chief Justice Earl Warren, and continues to receive calls for its reversal from academic and media sources. Richard A. Leo, *The Impact of Miranda Revisited*, 86 J Crim L & Criminology 621, 622-23 (1996); Paul G. Cassell and Bret S. Hayman, *Police Interrogation in the 1990s: An Empirical Study of the Effects of Miranda*, 43 UCLA L Rev 839, 840 (1996) (describing *Miranda* as "the Supreme Court's most famous criminal law decision," and citing a 1974 survey of the American Bar Association that ranked *Miranda* as "the third most notable decision of all time"). *Miranda* has its academic critics. Paul G. Cassell, *Protecting the Innocent From False Confessions and Lost Confessions — and From Miranda*, 88 J Crim L & Criminology 497, 538 (1998); Paul G. Cassell and Richard Fowles, *Handcuffing the Cops? A Thirty-Year Perspective on Miranda's Harmful Effects on Law Enforcement*, 50 Stan L Rev 1055 (1998); Joseph D. Grano, *Miranda v. Arizona and the Legal Mind: Formalism's Triumph over Substance and Reason*, 24 Am Crim L Rev 243 (1986). *Miranda* also has its supporters. John J. Donohue III, *Did Miranda Diminish Police Effectiveness?*, 50 Stan L Rev 1147 (1998) (questioning data and statistical methodologies relied on by *Miranda*'s critics); Peter Arenella, *Miranda Stories*, 20 Harv J L & Pub Pol'y 375 (1997) (hereinafter Arenella); Stephen J. Schulhofer, *Bashing Miranda is Unjustified — and Harmful*, 20 Harv J L & Pub Pol'y 347 (1997); Yale Kamisar, *Police Interrogation and Confessions* 223 (1980); Richard A. Leo and Richard J. Ofshe, *Using the Innocent to Scapegoat Miranda: Another Reply to Paul Cassell*, 88 J Crim L & Criminology 557 (1998). That debate aside, I accept, for purposes of this opinion, that *Miranda*-type warnings are a procedural safeguard that this court has adopted and enforced to effectuate rights protected by Article I, section 12, of the Oregon Constitution.

approval, confirmed that a suspect may request a lawyer in *any* manner during a police interrogation. *Miranda,* 384 US at 444-45, states:

> "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." (Emphasis added.)

The suspect's right to request a lawyer's assistance *in any manner* during an interrogation is the starting point in the analysis of the issue posed by this case. Despite the clarity of that requirement, courts still face several difficult problems in resolving disputes arising from equivocal requests for counsel asserted during police interrogations. First, under current court interpretations of the right to counsel, police must honor that right only if the suspect *invokes* it. In the absence of a legally sufficient invocation, police may secure a suspect's uncounseled incriminating statements even though the suspect has a lawyer, refers to the lawyer or a need for legal advice, and it is obvious to every police interrogator that the suspect needs to speak with a lawyer before speaking to the police.

Second, the courts have developed no simple, clear test for determining whether a suspect's oral reference to a need for legal advice during a police interview amounts to an invocation of the right to counsel. The majority's[2] conclusion that the suspect must make an *unequivocal* request for a lawyer rests the effectuation of the suspect's constitutional right

---

[2] The presence of at least four judges of the Oregon Supreme Court is necessary for the transaction of the court's business. ORS 2.100. The four-judge quorum requirement is satisfied here. The concurrence of a majority of that quorum in the lead opinion permits entry of judgment in this case. For that reason, I refer to the lead opinion as the majority opinion. However, because the lead opinion has received the affirmative votes of less than a majority of this seven-member court, the lead opinion does not carry the precedential weight of a majority opinion of the entire Oregon Supreme Court.

on his or her ability to speak to police interrogators in assertive, definite terms and without pauses, questions, or conditions. Some suspects, and particularly those familiar with police interrogations, are familiar with those requirements and follow them without difficulty.[3] Others, and especially women, members of some racial minority groups and the poorer, less-educated social classes, more often speak with authority figures in nonassertive, hedged speech patterns. Those groups commonly incorporate questions and other qualifications and conditions into their speech in order to avoid rudeness and to maintain respectful or friendly relationships with police officers.[4] For many suspects in those groups, as well as other suspects who, because of their ignorance or fear, are unfamiliar with the procedures and pressures that sometimes accompany police interrogation, ambivalent invocations of the right to counsel seem to be the rule, not the exception.

Exacerbating the difficulty in determining whether a suspect's reference to a lawyer matches the majority's adjectival legal standard (*i.e.*, an "unequivocal" invocation) is the fact that invocations, such as they are, commonly occur in isolated, unrecorded settings that require courts to reconstruct the suspect's statements after-the-fact, most often

---

[3] "Repeat players in the criminal justice system not only know their 'rights,' some of them learn the hard way that they cannot talk themselves out of trouble in a police interrogation room. In short, some of these repeat suspects are not relying on their *Miranda* rights as much as their realization that talking to the police in this setting is a lose-lose proposition. Repeat players who have learned this lesson will not talk to the police regardless of the legal regime controlling the interrogation process unless the length and pressures of the interrogation sap their will."

Arenella, 20 Harv J L & Pub Pol'y at 378 (footnote omitted).

[4] *See* Janet E. Ainsworth, *In a Different Register: The Pragmatics of Powerlessness in Police Interrogation*, 103 Yale LJ 259, 315-19 (1993), which discusses recent social science research and concludes:

"Current legal doctrine, premised on the expectation that an invocation of rights should be direct and unequivocal in form, does not serve the interests of the many speech communities whose discourse patterns deviate from the implicit norms in standard, 'male register' English." (Footnote omitted.)

*See also* Comment, *Davis v. United States: Leaving Less Articulate Suspects to Fend for Themselves in the Face of Custodial Interrogation*, 22 New Eng J on Crim & Civ Confinement 29 (1996); Comment, *Hung Up On Semantics: A Critique of Davis v. United States*, 23 Hastings Const LQ 313 (1995).

from the recollections of police officers. Sophisticated interview strategies usually permit or encourage officers, in reacting to an ambivalent invocation, to solicit clarification of a suspect's statements at length or to restate *Miranda* warnings and the consequences, some of which are negative, of an invocation of constitutional rights.[5] If the suspect, in responding, conditions or qualifies the request for counsel, the interview continues uninterrupted because the suspect's answer shows that the invocation was equivocal.[6]

The courts have taken three different approaches in addressing these problems surrounding a suspect's ambiguous invocation of the right to counsel.[7] The identified

---

[5] "Appellate courts have warned that the clarification standard does not sanction police attempts, whether by coercion or persuasion, to discourage suspects from invoking the right to counsel."

Ainsworth, 103 Yale L J at 312, *citing Thompson v. Wainwright*, 601 F2d 768, 772 (5th Cir 1979):

> "[T]he limited inquiry permissible after an equivocal request for legal counsel may not take the form of an argument between interrogators and suspect about whether having counsel would be in the suspect's best interests or not. * * * Such measures are foreign to the purpose of clarification, which is not to persuade but to discern."

[6] My point is that police should incorporate into their interview procedures the routine use of a simple, straightforward question that seeks clarification of a suspect's intention in referring ambiguously to a desire for a lawyer's help, not that police should avoid that tactic. As long as a suspect, properly advised of his or her rights, voluntarily and intelligently waives his or her right to counsel and chooses to speak to the police alone, the success of the police in obtaining incriminating statements, and the foolishness of the suspect's choice when viewed in retrospect, are not matters of constitutional concern.

> "[T]he Constitution is not offended when criminal suspects make foolish decisions that do not promote their self-interest. Since *Miranda* does not bar the police from using deceit and trickery to gain suspects' confidence once they have waived their rights, the police are free to play a confidence game in which their eventual betrayal of that trust generates *non-coerced* incriminating admissions." Arenella, 20 Harv J L & Pub Pol'y at 382 (footnotes omitted) (emphasis in original).

For an assessment of the problems that surround modern pschological methods of police interrogation, despite police observance of *Miranda* warning requirements, see Richard A. Leo and Richard J. Ofshe, *The Consequences of False Confessions: Deprivations of Liberty and Miscarriages of Justice in the Age of Psychological Interrogation*, 88 J Crim L & Criminology 429 (1998); Richard A. Leo, *From Coercion to Deception: The Changing Nature of Police Interrogation in America*, 18 Crime, L & Soc Change 35 (1992).

[7] The three prevailing judicial standards for testing the adequacy of the invocation of the right to counsel during police interrogation are discussed, with citations to relevant authorities, in Ainsworth, 103 Yale L J at 301-15; Comment, *Davis v. United States: "Maybe I Should Talk to a Lawyer" Means Maybe Miranda*

approaches are the *"per se* approach," the "threshold of clarity approach," and the "clarification approach." Under the *per se* approach, followed in a minority of jurisdictions, police must cease questioning a suspect even though the suspect's invocation of the right to counsel is ambiguous. The flaw in that approach is that it terminates police interviews needlessly, even though the suspect desires to continue.

Under the threshold of clarity approach, the police may disregard a request for counsel during an interview unless the request meets the court's minimum standard of clarity or certainty. That standard treats the suspect's ambiguous reference to a need for a lawyer during the interview as if it did not exist. Police operating under the threshold of clarity standard may disregard as a nullity a request for counsel that is accompanied by any question, condition, or qualification that renders the request ambiguous or equivocal.[8]

Finally, under the clarification approach that is the majority rule in most American jurisdictions, police must obtain clarification of an ambiguous invocation of the right to counsel before proceeding with an interview.[9] That approach

---

*is Unraveling*, 23 Pepp L Rev 607, 618-25 (1996); Comment, *How Do You Get a Lawyer Around Here? The Ambiguous Invocation of a Defendant's Right to Counsel Under Miranda v. Arizona*, 79 Marq L Rev 1041, 1049-57 (1996); Note, *So You Kinda, Sorta, Think You Might Need a Lawyer?: Ambiguous Requests for Counsel After Davis v. United States*, 49 Ark L Rev 275, 282-84 (1996); Comment, *Ambiguous or Equivocal Requests for Counsel in Custodial Interrogations after Davis v. United States*, 81 Iowa L Rev 161 (1995); Comment, *Criminal Procedure: United States Supreme Court Adopts the Threshold of Clarity Standard for Ambiguous Requests for Counsel*, 46 Fla L Rev 483, 486-93 (1994).

[8] In *Davis v. United States*, 512 US 452, 114 S Ct 2350, 129 L Ed 2d 362 (1994), the United States Supreme Court approved the admission of a suspect's statements to law enforcement officers in an interview after the officers clarified that, despite an ambiguous invocation of the right to counsel, the suspect desired to continue without a lawyer. A five-member majority indicated that the police were not required to ask clarifying questions in this context, because the suspect's invocation was ambiguous. *Davis*, 512 US at 459-62. Because the officers had sought clarification of the suspect's intention before continuing the interrogation, the latter view expressed by the *Davis* majority appears to be *dictum*.

[9] *See* n 7 (listing reviews that cite pertinent authorities). The concurring opinion of Justice Souter in *Davis* reports that state court authority and pre-*Davis* federal court authority were "lopsided" in favor of the clarification approach, 512 US at 466 n 1, and that, in the *Davis* case, the clarification approach was supported by national organizations representing chiefs-of-police, district attorneys, and sheriffs, as well as the United States Department of Justice. 512 US at 467 n 2.

permits police to use simple questions to clarify the suspect's true intention regarding continuing the interview without counsel and, thus, produces a more accurate understanding of whether the suspect's statement was an invocation of the right to counsel.

"The majority of courts that have decided the question of the appropriate standard to use in assessing ambiguous or equivocal invocations of the right to counsel have chosen to take a third approach, adopting a rule that permits clarification of unclear assertions. This third approach charts a middle course between the other two standards, instructing police to respond to ambiguous assertions of the right to counsel by clarifying the suspect's request. In contrast to the threshold-of-clarity standard, this clarification approach gives some legal effect to ambiguous or equivocal assertions of the right to counsel. Specifically, under the clarification standard, hedged assertions of the right to counsel that would be accorded no significance under the threshold-of-clarity standard may be given legally operative effect, limiting further police interrogation. On the other hand, unlike the per se invocation rule, which absolutely bars further police interrogation upon any assertion of the right to counsel, the clarification approach permits police to continue the interrogative exchange with the suspect after a less than clear invocation of the right to counsel. The ensuing police questioning is, at least in theory, limited solely to questions designed to clarify whether the suspect intended her ambiguous statements to invoke the Fifth Amendment right to assistance of counsel."

Ainsworth, 103 Yale L J at 308-09 (footnotes omitted).

The majority begins its analysis by adopting the view of the Court of Appeals that defendant made an "equivocal" request for counsel when he announced, during the police interview, that if he needed a lawyer, he wanted one. I agree with that assumption. Whether defendant's statement is labeled as "equivocal" or "ambiguous," the court *may* construe it plausibly as an invocation of the right to counsel, but need not *necessarily* so construe it.[10] What remained in doubt

---

[10] "Although the terms 'ambiguous' and 'equivocal' are generally used interchangeably in the case law addressing this issue, they should be distinguished. Properly speaking, a statement is ambiguous if the addressee is unsure which of two or more interpretations to adopt to understand the meaning of an utterance; the statement is equivocal if the speaker is uncertain or ambivalent

about defendant's statement after he uttered it was not whether an objective listener reasonably could take the statement as an invocation, but whether defendant intended his imperfect expression to constitute an invocation of his rights.

The majority acknowledges, and I agree, that this court's case law recognizes "the interrogating officers' obligation * * * to clarify an equivocal invocation of the right to counsel * * *." 327 Or at 340 (citing *State v. Charboneau*, 323 Or 38, 55, 913 P2d 308 (1996); *State v. Montez*, 309 Or 564, 572-73, 789 P2d 1352 (1990)). That obligation aligns Oregon with the majority rule, discussed earlier, that requires use of the clarification approach by police in responding to ambiguous invocations of the right to counsel.

The majority next asks whether certain circumstances may obviate the officers' duty to clarify the suspect's intention, and answers that such circumstances may exist. Again, I agree.

The duty to clarify the suspect's intention is rooted in common sense, not ceremony. The right to request counsel is personal to the suspect and may be invoked at any time and in any manner during interrogation. The objective of asking a clarifying question is to determine with certainty whether the suspect, by his ambiguous reference to counsel, actually intended to exercise his personal right to seek legal advice before proceeding with the interview. In the face of an ambiguous invocation, asking a clarifying question provides *assurance* that the " 'right to choose between speech and silence remains unfettered throughout the interrogation process.' " *Connecticut v. Barrett*, 479 US 523, 528, 107 S Ct 828, 93 L Ed 2d 920 (1987) (quoting *Miranda*, 384 US at 469). A helpful secondary effect of the duty is that it relieves police officers of the difficult burden of guessing whether a suspect's statement was an unequivocal or merely ambiguous invocation and, thus, protects the admissibility of subsequent

about what he or she really means to say. Ambiguity is judged by the effect on the listener, whereas equivocality is assessed by the intent of the speaker."

Ainsworth, 103 Yale L J at 299 n 203. I, too, use the terms "ambiguous" and "equivocal" interchangeably to refer to a statement that plausibly may invoke the right to silence or to counsel, but need not necessarily be construed in that manner.

incriminating statements should the suspect choose to make them.

In view of the practical justifications for the clarification approach, not every invocation will require subsequent clarification through questions by the police. For example, no clarifying question is necessary if the suspect accompanies an ambiguous invocation with other statements, not prompted by police interrogation, that make it clear that the suspect did not intend to invoke the right to counsel, or that the suspect, despite the ambiguous invocation, desires to continue to interview without the assistance of counsel. In those circumstances, the suspect's actual intention is not in doubt. If the suspect removes the doubt about his intention and asks to continue the interview without counsel present, it matters little that he does so spontaneously rather than in response to clarifying questions from the police.

The majority concludes that two aspects of defendant's conduct during his interrogation clarified his ambiguous invocation of the right to counsel or, at least, obviated the need for clarifying questions. The first is defendant's physical gesture with his hands that, according to the majority, "cut off further questions by the officers" and enabled defendant to "assert[ ] control over the conversation * * *." 327 Or at 341.

That analysis, while dramatic, is not accurate. I agree that the officers have no duty to interrupt a suspect who desires, during an interview, to make a statement of the kind portrayed here. Notwithstanding defendant's gesture with his hands and his brief oration, the officers had ample opportunity immediately after those actions to seek clarification of defendant's earlier ambiguous reference to his desire for a lawyer. Defendant's gestures and his assertion of a desire to say a few things to the officers do not make clear his intention in expressing a need for a lawyer.

The second aspect of defendant's conduct concerns the substance of defendant's statement to the police. The majority states that clarifying questions are unnecessary if the state can show "that the suspect had the requisite state of mind, *viz.*, was willing to enter into a generalized discussion

of the substance of the charges without the assistance of counsel." 327 Or at 340. As I discuss above, I have no objection to that general legal standard. However, the majority concludes that defendant's statement here satisfies that standard, because defendant "evinced a willingness and a desire for a generalized discussion about the investigation" and "chose to reopen the topic of the investigation." 327 Or at 341.

It is important to keep in mind what defendant actually said to the officers. He said that he was losing his relationship with his girlfriend and that he was not guilty of the criminal actions that the officers had discussed with him. Contrary to the majority's view, those statements do not express, either expressly or by implication, a *willingness* and a *desire* for a general discussion about the criminal charges. I agree that defendant's assertion of his innocence pertained to the investigation of possible criminal activity, but his statement expressed no desire to extend the police interrogation.

Significantly, defendant's statement to the officers also did not clarify his earlier ambiguous invocation of the right to counsel. Defendant never mentioned, let alone made clear, his imperfectly expressed desire for a lawyer's assistance. To use the test that the majority articulates, defendant's statement did not answer the question whether he was "willing to enter into a generalized discussion of the substance of the charges *without the assistance of counsel.*" *Id.* (emphasis supplied). As a result, defendant's statement did not obviate the officers' fulfillment of their obligation to seek clarification of defendant's ambiguous request for a lawyer.

The majority's rationale, that defendant "evinced a willingness and a desire" to speak about the investigation and that he "chose to *reopen* the topic of the investigation," (emphasis added) suggests that the majority seeks to rely on a body of law that the United States Supreme Court uses in analyzing whether an incarcerated suspect has "initiated" an interrogation with the police. *Oregon v. Bradshaw*, 462 US 1039, 103 S Ct 2830, 77 L Ed 2d 405 (1983) (plurality decision); *Edwards v. Arizona*, 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981). *Edwards* states the initiation rule as follows:

> "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

451 US at 484-85 (footnote omitted).

The majority's attempt to make the law of initiation apply here produces a bad fit. That law is designed to assist police officers in determining whether they can speak again with a suspect after he has invoked his rights, the interrogation has ceased, and a period of time has elapsed. As *Edwards* confirms, a waiver of rights cannot be established in this context "by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights." 451 US at 484. That requirement demonstrates that the initiation rule is inapplicable to a suspect's statements, like defendant's brief oration here, that respond directly to police-initiated interrogation. The majority's effort to bifurcate this single, police-initiated interview, and to suggest implicitly that defendant, having "initiated" the second phase of the interview, was not responding to interrogation by the police, produces a serious distortion of the relevant facts and the initiation rule.

The majority's approach carries a potential for mischief. That approach will induce officers not to seek clarification of an ambiguous invocation of rights, but instead to wait until a suspect says something that relates, even indirectly, to the matters under discussion (including as little as an assertion of innocence), and then proceed with the interrogation. Correctly analyzed, the majority's purported exception to the clarification approach likely will swallow it whole.

I see no reason to adopt such a sweeping exception in cases of this kind. Because defendant's invocation of his rights was ambiguous, and his subsequent oration did not

clarify the ambiguity, the policy reasons that support the clarification approach point to the correct legal answer. When defendant finished speaking, the officers had a clear opportunity to seek clarification of defendant's ambiguous invocation of his right to counsel and should have done so. Instead, despite the reasonable import of defendant's request, they presumed that he did not want a lawyer, never asked him what he meant, and pressed ahead with the interrogation. The trial court concluded, that during these events, defendant did not knowingly and intelligently waive his constitutional right to counsel. I would affirm that conclusion.

Accordingly, I dissent.