Argued and submitted March 19, West Linn High School, West Linn, affirmed September 3, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# PEATER E. KRAMYER,
*Defendant-Appellant.*

Polk County Circuit Court
05P50285; A130810

194 P3d 156

Leonard Ostrow argued the cause for appellant. With him on the brief was McNeill Law Office.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Miller, Judge pro tempore.

MILLER, J. pro tempore.

## MILLER, J. pro tempore

This is a criminal case in which defendant was convicted, following a jury trial, of driving under the influence of intoxicants (DUII). ORS 813.010. On appeal, defendant assigns error to the trial court's denial of his motion to suppress statements and physical evidence obtained by police after defendant had invoked his right to counsel. For the reasons explained below, we affirm.

One night at about 11:00 p.m., a City of Independence Police Officer saw a white pickup truck make a wide left turn and drive down Main Street at about 15 miles per hour; the speed limit was 25 miles per hour. The lights on the truck were not working. The officer stopped the pickup and recognized defendant, with whom he had had contact before, as the driver. As he approached the pickup, the officer noticed a very strong odor of marijuana coming from it. The officer told defendant the reason for the stop and, as he was talking to defendant, he noticed that defendant had slow, slurred speech, dilated pupils, and reddened eyes. When the officer asked defendant for his license, proof of insurance, and registration, the officer noticed that defendant's movements were slow and deliberate. The officer testified that, at that point, he "asked [defendant] if he had been using marijuana that night, and he said that he had been." When the officer asked defendant to elaborate,

"He said that he had smoked a bowl of marijuana at about 8:00 that evening, and he also had used some marijuana as a seasoning in his spaghetti, and that he had eaten some just before driving—just before he got in his pickup to drive."

The officer asked defendant if he would perform field sobriety tests and defendant agreed to do so. The officer administered the horizontal gaze nystagmus test, and defendant exhibited no nystagmus. The officer then administered the walk and turn test; defendant had difficulty performing that test. As the officer began to instruct defendant on how to perform the one-leg stand test, defendant told the officer that he felt that he was being harassed, that he was nervous, and that he wanted a lawyer. Nonetheless, without stopping,

defendant continued to perform the one-leg stand test. At that point, the officer was not sure whether defendant wanted a lawyer, because defendant had continued the test. The officer therefore stopped defendant from continuing the test:

"I stopped him from doing that and I asked a couple of questions to clarify whether or not he, in fact, wanted his attorney. I asked him if he was willing to continue with us. I told him that he could have his attorney present with him * * * which was within his rights. I also told him that he could refuse me."

Defendant responded that he was willing to continue and that "he wasn't refusing." Ultimately, the officer asked defendant three times whether he wanted to continue the field sobriety tests; defendant responded affirmatively. The officer then completed administration of the one-leg stand test, the Romberg balance test, and the finger-to-nose test.[1]

Following the completion of the field sobriety tests, the police officer arrested defendant for DUII and transported him to the police station, where he was given *Miranda* warnings. Defendant never again mentioned that he wanted a lawyer present. At the police station, defendant was interviewed and examined for about an hour by a drug recognition expert. Although he was again read *Miranda* warnings, at no time during that period did defendant ask for a lawyer.

Before trial, defendant filed a motion to suppress "statements and physical evidence taken by police * * * because they were the result of interrogation by police after [defendant] had invoked his right to remain silent by asserting his right to counsel." The trial court held a hearing at which the arresting officer and drug recognition expert testified. At the close of the testimony, defense counsel argued:

"What the Court has is this assertion of counsel, which is ignored, and I would urge that everything that happens

---

[1] The Romberg balance test requires the suspect to estimate the passage of 30 seconds. Defendant estimated that 30 seconds had passed when only 22 seconds had passed. In addition, he exhibited certain physical movements during the test that the officer testified are indicative that the suspect is under the influence of intoxicants. Defendant performed poorly on the finger-to-nose test.

after [defendant] asks for his attorney should be suppressed."

The court then made oral findings and conclusions. The court determined that defendant was not in custody when the officer requested that he perform the field sobriety tests or at the time that he asked for a lawyer. The court found that defendant continued with the field sobriety test immediately after requesting counsel: "The officer basically had to interrupt [defendant] * * * to see if he wanted to talk to his attorney before continuing the test, and the defendant just went ahead and attempted it." According to the court, "defendant made it clear that he wanted to go ahead." The court denied the motion to suppress and, as noted, defendant was convicted of DUII.

On appeal, defendant argues that the trial court erred in denying his motion to suppress. He argues that he unequivocally invoked his right to counsel under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. The state remonstrates that this court should affirm for any one of four reasons. First, the state asserts, under both Article I, section 12, and the Fifth Amendment, a suspect's invocation of the right to counsel precludes further interrogation only if made while in custody or compelling circumstances; here, the trial court found, defendant was not in custody. Second, the state argues, defendant's request for counsel was equivocal, and the police officer did not violate Article I, section 12, or the Fifth Amendment by asking clarifying questions. Third, according to the state, even if defendant unequivocally invoked his right to counsel, his immediate reinitiation of the conversation with the police officer acted as a waiver of his rights against self-incrimination. Finally, the state posits, even if the officer violated defendant's rights against self-incrimination, the proper remedy is to remand to the trial court for it to determine what, if any, evidence that was obtained after defendant's invocation was "testimonial," and therefore should have been suppressed.

■ Although defendant unequivocally invoked his right to counsel by stating that he wanted a lawyer, we agree with the state that defendant then reinitiated the interaction with

the police officer, thereby waiving his right to counsel. As the Supreme Court has explained,

> "[W]hen a suspect in police custody makes an unequivocal request to talk to a lawyer, all police questioning must cease. When the request is equivocal, however, the police may follow up with questions intended to clarify whether the suspect meant to invoke his right to counsel. In either case, the suspect may thereafter waive the right to have counsel present during that or later interrogations."

*State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998) (citations omitted). "An accused initiates communication by making a statement that 'evince[s] a willingness and a desire for a generalized discussion about the investigation[.]' " *State ex rel Juv. Dept. v. Thai / Schmolling*, 138 Or App 354, 358, 908 P2d 844 (1995) (quoting *Oregon v. Bradshaw*, 462 US 1039, 1045-46, 103 S Ct 2830, 77 L Ed 2d 405 (1983)). In *Meade*, a case in which the defendant had equivocally invoked his right to counsel, the court noted that it had not previously had the opportunity to address whether or under what circumstances a suspect's initiation of conversation with a police officer after equivocally invoking the right to counsel constitutes a waiver of that right under the Oregon Constitution. The court explained that, in the case of an equivocal invocation, "a suspect's own *actions* may, in a given case, eliminate any need for clarification by the officers." *Meade*, 327 Or at 340 (emphasis added). The court pointed out that "[t]he state may show by forms of evidence other than a suspect's responses to clarifying questions from the police that the suspect had the requisite state of mind, *viz.*, was willing to enter into a generalized discussion of the substance of the charges without the assistance of counsel." *Id.*

Given *Meade*'s focus on the conduct necessary to constitute a reinitiation, there is no reason to think that its holding (in the context of an equivocal invocation of the right to counsel) does not apply equally to reinitiation following an unequivocal invocation. Here, after he mentioned that he wanted a lawyer, defendant, without breaking stride, continued engaging in the conduct that gave rise to the evidence he sought to suppress. That is, his actions indicated a willingness and desire to continue with the investigation. Thus,

despite his initial invocation of the right to counsel, defendant thereafter indicated his willingness to continue the investigation by continuing the one-leg stand test. That then permitted the officer to further question him.

But even if defendant's continued performance of the one-leg stand did not constitute reinitiation, the combination of defendant's initial invocation and his immediate choice to continue the investigation, taken together, constituted an equivocal invocation of the right to counsel. At that point, the police officer reasonably could have been unsure of defendant's intentions. Accordingly, the officer was entitled to ask clarifying questions to determine defendant's intent. *See Meade*, 327 Or at 339 ("When the request is equivocal, however, the police may follow up with questions intended to clarify whether the suspect meant to invoke his right to counsel."). And so the officer did, telling defendant that he could have an attorney and asking no fewer than three times whether defendant wanted to continue the field sobriety tests. As the trial court found, "defendant made it clear that he wanted to go ahead." Thus, despite defendant's initial invocation of the right to counsel and regardless of whether he subsequently reinitiated his interaction with police, defendant ultimately waived the right to counsel, following permissible clarifying questions. The trial court correctly denied his motion to suppress.[2]

Affirmed.

---

[2] Defendant cites no authority—and we are aware of none—suggesting that the analysis of the issue we decide here is different under the federal constitution than under the Oregon Constitution.