Argued and submitted June 30, 2011, affirmed July 25, 2012

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**GARY RICHARD DOSER,**
*Defendant-Appellant.*

Multnomah County Circuit Court
090130091; A143165

283 P3d 410

Kenneth A. Kreuscher argued the cause for appellant. With him on the brief was Portland Law Collective, LLP.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

_____
* Brewer, J., *vice* Rosenblum, S. J.

## SERCOMBE, J.

Defendant appeals a judgment of conviction for identity theft, ORS 165.800, and forgery in the second degree, ORS 165.007. He raises several assignments of error, all but one of which we reject without discussion. We write only to address defendant's contention that the trial court erred in denying his motion to suppress statements that he made during a custodial interrogation. Defendant contends that, during that interrogation, he made five equivocal invocations of his right to be free from compelled self-incrimination under Article I, section 12, of the Oregon Constitution[1] and that, because police did not clarify his intent to invoke that right, his statements following those equivocal invocations should have been suppressed. We conclude that defendant's statements were not invocations of his Article I, section 12, right to remain silent and, accordingly, affirm.

The pertinent facts are as follows. Defendant entered a bank and attempted to cash a $300 check drawn on the account of Stanley Beaudoin. Defendant provided the teller with his Oregon identification card. However, because he did not have an account with the bank, the teller examined Beaudoin's account records to determine whether to cash the check. While doing so, the teller discovered that Beaudoin rarely used the account, that the check was out of sequence, and that the signature on the check differed from Beaudoin's usual signature. Based on that information, the teller asked defendant to provide his telephone number and to mark his thumbprint on the check. Defendant complied with those requests. While defendant waited, the teller

---

[1] Article I, section 12, provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

We sometimes refer to this right as the "right to remain silent." *See State v. Harding*, 221 Or App 294, 300-01, 189 P3d 1259, *rev den*, 345 Or 503 (2008). That right differs in certain respects from the Article I, section 12, right to counsel, which is not at issue in this case. *See State v. Holcomb*, 213 Or App 168, 174, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (noting that, following an unequivocal invocation of the right to remain silent or the right to counsel, "[t]he opportunity to resume interrogating the suspect varies depending on which right the suspect unequivocally invokes").

called Beaudoin, who told her that he had not written the check.

At that point, the teller informed a bank manager of the suspicious check, and the manager called the police. The teller then asked defendant where he had obtained the check, and defendant explained that a person named Jennifer had given it to him. Defendant repeatedly asked the teller to return his identification card and the check. The teller refused, and defendant left the bank and walked quickly toward a nearby restaurant. Shortly thereafter, defendant was arrested and given *Miranda* warnings. After stating that he understood his rights, defendant told the arresting officer that Jennifer had given him the check because she owed him money.

Later, defendant was interviewed by Officer Glass, who specializes in investigating cases of identity theft. Glass readvised defendant of his *Miranda* rights, and defendant again stated that he understood them. Glass told defendant that she wanted to talk to him about the check. Defendant replied:

> "I've already said all this before, once before to that other [officer], so I just want to be done with this. I'll tell you everything. I got this check from a girl named Jennifer. I worked on her car the day before yesterday. Jennifer said Stanley was her boyfriend. I have 20 days left on parole. I wouldn't have done this if I knew it was bad."

Glass and defendant then discussed similarities between defendant's handwriting and the handwriting on the check, and the altered state of defendant's identification card. Defendant spoke willingly regarding both topics and offered to produce a handwriting sample for Glass to use during the interview.

Glass then shifted her questioning to the nature and extent of defendant's interactions with Jennifer. Defendant argues that he invoked his right against compelled self-incrimination in his responses to Glass's questions during this conversation through the words that we emphasize. Glass asked defendant where he had done the work for Jennifer, and defendant replied, "85th and Halsey, *but I live*

*by the code of the convict, so I'm not going to give anyone up.*" Glass stated that she was looking for information that would corroborate defendant's story. He responded, "*I'm not going to tell you anything that's going to send you up there to find Jennifer.*" At that point, Glass asked defendant additional questions regarding his criminal history and the check. Defendant answered those questions, stating that the check was "survival money." When Glass followed up on that statement, defendant stated that he was not going to be a "*rat.*" Glass again expressed her desire to obtain information that would corroborate his story, and defendant responded, "*Obviously you're not going to be able to clear this up.*" Without prompting by Glass, defendant further explained that "*he had nothing to tell [Glass] that would help [defendant] out.*" Glass continued to interview defendant, and defendant made additional brief statements consistent with his version of events.

Defendant was charged with identity theft and second-degree forgery. Before trial, defendant moved to suppress his statements to Glass, arguing, in part, that those statements were obtained in violation of his right to remain silent under Article I, section 12. The trial court denied the motion:

> "The defendant engaged in a conversation with Detective Glass. He did not invoke his right to remain silent or his right to an attorney. He said certain things like, 'I live by the code of the convict, so I'm not giving anyone up.' He said he was not going to be a rat, but that doesn't mean he wanted to end the conversation completely.
>
> "He offered, for example, to show the officer how he wrote. He talked about [how] he wrote * * * the letter y. He explained about how the officer wrote on his ID card. When I view the totality of the circumstances, I conclude that the defendant was merely deciding to answer some questions and not others."

The jury found defendant guilty of both crimes.

On appeal, defendant contends that the trial court erred in denying his motion to suppress. Specifically, he asserts that the five emphasized statements are equivocal invocations of his right to remain silent and that, accordingly,

Glass was required to clarify whether defendant was invoking that right before resuming the interrogation. The state responds that none of defendant's statements is an equivocal invocation of his right to remain silent. We agree with the state.

Under Article I, section 12, when a suspect in police custody unequivocally invokes the right to remain silent, police must cease interrogation of that suspect. *State v. Harding*, 221 Or App 294, 300-01, 189 P3d 1259, *rev den*, 345 Or 503 (2008) (citing *State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998)). When a suspect makes an equivocal or ambiguous invocation of the right to remain silent, police must ask clarifying questions to determine whether the suspect intended to invoke that right before resuming the interrogation. *Id.* at 301 (citing *State v. Charboneau*, 323 Or 38, 54, 913 P2d 308 (1996)). However, the requirement to clarify an equivocal invocation "may be obviated if the suspect initiates further substantive conversation concerning the investigation before the officer has clarified the suspect's intent." *State v. Holcomb*, 213 Or App 168, 174, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (citing *Meade*, 327 Or at 340).

To determine whether a defendant made an unequivocal or equivocal invocation, or neither, "we view the statement in light of the totality of the circumstances at and [preceding] the time that it was made, 'to ascertain whether a reasonable officer in the circumstances would have understood that defendant was invoking his rights.'" *Harding*, 221 Or App at 301 (quoting *Holcomb*, 213 Or App at 176). What a defendant said or did not say during a custodial interrogation is a question of fact, but whether a defendant's statement constitutes an unequivocal or equivocal invocation of the right to remain silent, or neither, is a question of law. *Id.*

We conclude that none of defendant's statements was an equivocal invocation of his right to remain silent under Article I, section 12. Defendant made it clear early in his conversation with Glass—before any of the relevant statements were made—that he was willing to speak generally regarding his possession of the check. He told

Glass that he would "tell [her] everything." Moreover, he discussed at length the similarities between his handwriting and the handwriting on the check, offered to produce a handwriting sample for Glass, and explained how and why his identification card had been altered. Defendant remained willing to answer Glass's questions about his criminal history and the check, any of which could have solicited admissions against his interest in avoiding a criminal conviction. Although defendant became evasive when Glass indicated her desire to corroborate his story by refusing to answer questions that, in his view, would implicate Jennifer, defendant did not communicate a hesitancy or uncertainty about speaking at all or responding to any question that might inculpate him in the commission of a crime.

Under the circumstances, a reasonable officer would not have understood defendant's statements to be equivocal invocations of his right to remain silent. Instead, defendant chose to answer some questions and not others. *See State v. Longo*, 341 Or 580, 592-93, 148 P3d 892 (2006), *cert den*, 552 US 835 (2007) (affirming the trial court's holding that, where the defendant refused to answer particular questions but otherwise indicated that he was willing to talk to police, the defendant did not invoke his right to remain silent); *State v. Smith*, 310 Or 1, 10, 791 P2d 836 (1990) (holding that a defendant had not invoked his right to remain silent when, in response to a particular question, he said, "I have nothing to say"; noting, instead, that the defendant "merely exercised his right to answer some questions and not to answer others"). Defendant's choice to speak did not imply a desire to remain silent.

Affirmed.