Argued and submitted February 23, 2016, reversed and remanded
September 7, 2017, petition for review denied February 1, 2018 (362 Or 482)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PAUL JOSEPH SANELLE,
*Defendant-Appellant.*

Washington County Circuit Court
C121070CR; A156503

404 P3d 992

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the reply brief was Ernest Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Defendant appeals his judgment of conviction for murder constituting domestic violence, ORS 163.115. At issue in this appeal is whether defendant equivocally invoked his right to counsel under Article I, section 12, of the Oregon Constitution during a custodial interview and, if he did, whether the interviewing officers clarified whether defendant meant to invoke his right to counsel. The trial court ruled that statements that defendant made in the interview were admissible upon determining that defendant did not invoke his right to counsel when, immediately after officers read defendant his *Miranda* rights and asked him if he understood them, he responded by asking "Where's the lawyer?" Defendant assigns error to that ruling. For the reasons explained below, we conclude that defendant, contrary to the state's position, preserved his appellate argument and, at the very least, that defendant equivocally invoked his right to counsel. We also conclude that the interviewing officers failed to clarify the intent of defendant's statement, thereby rendering his subsequent statements to police inadmissible. Further, admission of the statements was not harmless. Consequently, we reverse and remand, and need not reach defendant's remaining assignments of error.

We review for legal error whether defendant's statement was an equivocal invocation of his right to counsel. *State v. Nichols*, 361 Or 101, 106, 390 P3d 1001 (2017). We limit our discussion of the circumstances of defendant's statement and the interview to the record developed at the pretrial hearing, *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012),[1] and are bound by the trial court's findings of what transpired during the custodial interrogation that are supported by evidence in the record, *State v. Avila-Nava*, 356 Or 600, 609, 341 P3d 714 (2014). Consistent with that standard, we set out the facts below.

---

[1] The custodial interview of defendant was recorded, and the recording was played for the jury. However, the recording was not played at the pretrial hearing; instead, the officers described the interview. For the purposes of determining whether defendant preserved his appellate argument and evaluating the state's argument that it was not afforded an opportunity to fully develop the record, we consider only the arguments and evidence presented at the pretrial hearing.

Before trial, the state moved to schedule a pretrial hearing on whether statements defendant made during a May 12, 2012, custodial interview in which defendant asked "Where's the lawyer?"—as well as other statements made to officers by defendant on the night of the victim's death and at other times before the May 12 custodial interview—were in violation of defendant's right to assistance of counsel during a custodial interview. The pretrial hearing concerning the admissibility of the May 12 statements occurred during a lengthy "omnibus" hearing, which was intended to resolve several legal and procedural issues.

Detectives Anderson and Rau were the officers who interviewed defendant on May 12 and were the last officers to testify during the *Miranda* portion of the omnibus hearing. As to the May 12 interview, which occurred on a Saturday, Rau testified that defendant had been arrested the day before and was in police custody and, knowing that defendant would be arraigned on Monday, the detectives wanted to ask defendant a "handful" of questions. It was Rau's experience that, "after people are arraigned," there is not "anymore room for interviews." The detectives recorded the interview. Rau first read defendant his *Miranda* rights. Rau then asked defendant if he understood each of the rights that had been explained to him. Defendant responded, "Where's the lawyer?" Rau asked defendant, "Have you got a lawyer? Have you hired a lawyer?" Defendant answered "No" and said that he could not afford one. Rau told defendant, "You'll be appointed an attorney if you can't afford one," and indicated that the appointment would occur at his arraignment on Monday. Anderson followed up by asking defendant, "Do you understand your rights?" and inquiring whether defendant was willing to speak with the detectives. Defendant answered, "Yes, absolutely."

In particular relevance to our discussion of preservation below, the following exchange occurred during defense counsel's cross-examination of Rau:

"[DEFENSE COUNSEL]: When [defendant] said, 'All right, where's the lawyer,' you had a decision to make how to respond to that, right?

"[RAU]: Yes.

"[DEFENSE COUNSEL]: And you asked him, 'Did you call one already?'

"[RAU]: Correct.

"[DEFENSE COUNSEL]: Did you let him know he was going to be afforded an attorney, that is appointed an attorney on Monday when he was arraigned?

"[RAU]: Yes.

"[DEFENSE COUNSEL]: You specifically said that?

"[RAU]: Yes. Words to that effect. I think that's what I specifically said.

"[DEFENSE COUNSEL]: Did you ask him if he wished to delay the interview until he was appointed an attorney?

"[RAU]: No.

"[DEFENSE COUNSEL]: Did you tell him he could delay the interview until he was appointed an attorney?

"[RAU]: No.

"[DEFENSE COUNSEL]: When he said, yes, he understood his rights, did you clarify with him what he understood?

"[RAU]: No. I think *** Anderson at that point thanked him for being willing to speak with us.

"[DEFENSE COUNSEL]: So, you interpreted or Detective Anderson—well, you interpreted his understanding of the rights as a willingness to speak?

"[RAU]: He said he understood his rights and we started to converse after that. Had he said he didn't want to or I don't want to do it now, then we would have stopped, but that's not what happened."

Defense counsel concluded his cross-examination, and the state declined the opportunity to conduct a redirect examination of Rau. Thus, evidence came to a close for the *Miranda* portion of the hearing, and the court called for a 10-minute break.

Upon returning, the court engaged in the following colloquy with the parties:

"THE COURT: * * * The State has presented its evidence on the motion to admit the statements of defendant. Defendant does not want to present any evidence. And so with that introduction, [prosecutor]?

"[PROSECUTOR]: Well, judge, in the interest of saving time and with the court's permission, I would waive any opening argument and confine my comments to simply responding to defense counsel.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: Your Honor, at this time we're not offering any arguments based on the testimony that we've heard, Your Honor, so—

"THE COURT: Okay.

"[PROSECUTOR]: —(inaudible).

"THE COURT: I would invite comment. I would take it that from the State's perspective that conversation, if you will, about the attorney was not an invocation either equivocal or direct, obviously. That would be the State's position with respect to that testimony?

"[PROSECUTOR]: Yes, Your Honor.

"THE COURT: Okay. Thanks very much. This matter comes before the court for hearing at the request of the State for the court to rule pretrial on whether or not the statements made by defendant to the police officers investigating this case may be admissible at his trial.

"At such a pretrial hearing the State is obligated to convince the court using witnesses and evidence that by a preponderance of the evidence the State has complied with the so-called *Miranda* rule and that the statements given to the police officers were otherwise knowingly, voluntarily and intelligently made.

"* * * * *

"With respect to the statements that were made to Detective Anderson on the following day, Saturday, May 12th. Defendant, of course, was in custody and prior to the interview with the detectives, defendant was advised of his *Miranda* warnings formally. In this particular circumstance, defendant * * * was advised of the so-called *Miranda* warnings by Detective Rau and after the full panoply of

*Miranda* warnings was advised of them orally, defendant responded with the question, 'Where's the lawyer?'

"Detective Rau replied that you can—or, 'Did you call a lawyer and retain one?' Defendant responded with the statement, 'No.' And Detective Rau replied, 'You'll be appointed an attorney at your arraignment on Monday.' Detective Anderson asked the question, 'Do you understand your rights?' Defendant replied, 'Absolutely.' And, of course, we know that thereafter another interview was conducted that was audio recorded.

"Defendant was in custody and was advised of his *Miranda* rights. And the court finds that that question, 'where's the lawyer' and the conversation that subsequently followed was not an invocation of either right to remain silent or the right to have counsel present before further questioning is conducted.

"That defendant engaged in a lengthy interview without otherwise invoking his right to remain silent or his request for an attorney, together with his verbal acknowledgment that he understood his *Miranda* rights absolutely, convinces the court that that is not an invocation of the right to counsel or the right to remain silent."

Consequently, the detectives testified at defendant's trial about what defendant said during the interview, and the state also played the audio recording of the interview. Defendant was convicted of murder constituting domestic abuse. He appeals that conviction.

We set out the relevant legal principles concerning defendant's challenge in greater detail below but, for purposes of our preservation discussion, we note that, under Article I, section 12, a suspect in custody has a right against self-incrimination and a derivative right to counsel.[2] *Avila-Nava*, 356 Or at 609, 611 n 6. That right is protected by the requirement that, if the suspect unequivocally invokes the right to counsel, officers must stop interrogating the suspect and, if the suspect equivocally invokes the right to counsel, officers must follow up with questions to clarify if the suspect meant to invoke his Article I, section 12, right to counsel before proceeding with interrogation. *Id.*

---

[2] Article I, section 12, provides, in part, that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself."

In the state's view, defendant's claim of error is unpreserved because defendant failed to argue to the trial court that he equivocally invoked his right to counsel and that the officers failed to clarify whether he invoked his right to counsel. Regarding preservation, in general, if an issue has not been presented to the trial court, we will not consider it on appeal. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); ORAP 5.45(1). There are important reasons for the rule of preservation. The rule "gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Id.* Another purpose of preservation is to "ensure[] fairness to opposing parties, by requiring that the positions of the parties are presented clearly to the initial tribunal so that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (internal quotations omitted). Finally, preservation "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Peeples*, 345 Or at 219-20.

It bears emphasizing that, "[u]ltimately, the preservation rule is a practical one, and close calls *** inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009). Moreover, the

"fact that the level of detail or thoroughness with which a party articulates a position may leave something to be desired does not mean that it was insufficient to serve the rule of preservation's pragmatic purposes. The point, as we have explained, is whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error.

"Particularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated shorthand references suffice to put all on notice about the nature of a party's arguments."

*Walker*, 350 Or at 550.

In this case, the state contends that defendant failed to preserve his appellate argument because "defendant did not present *any* argument whatsoever regarding the motion" (emphasis in the state's brief) and, after the prosecutor declined to make an argument after the close of evidence, defense counsel stated that he was "not offering any arguments based on the testimony we've heard."[3] Further, the state contends that, had defense counsel raised the issue at the time the parties declined to make closing arguments, the "prosecution very likely would have introduced a copy of the recording into evidence at the pretrial hearing" because the recording includes additional portions of the interview that were not testified to by detectives Rau and Anderson.[4] That evidence establishes, according to the state, that defendant waived his *Miranda* rights. Thus, the state posits that the record was not fully developed. For his part, defendant asserts that, if the pretrial hearing is viewed in its entirety, the issue was preserved and the purposes of preservation were satisfied. We agree with defendant and conclude that his argument is preserved.

First, it is apparent from the procedure used by the parties and the court that all understood that whether defendant's statements in the May 12 interview were obtained in violation of his *Miranda* right to counsel was at issue, and that all understood that it was the state's burden to prove that they were not. The state moved to schedule a hearing to resolve whether defendant's statements were obtained in compliance with his *Miranda* right to counsel. Accordingly, the state adduced testimony from the detectives

---

[3] The state also asserts that defendant's failure to object at trial when the state played a recording of the interview further supports its contention that defendant failed to preserve his argument. However, "[o]nce a court has ruled, a party is generally not obligated to renew his or her contentions in order to preserve them for the purposes of appeal." *Walker*, 350 Or at 550.

[4] The state also asserts in a supplemental memorandum of additional authorities that appellate decisions pertaining to the doctrines of invited error and waiver are relevant to this issue. We reject those arguments without further discussion except to explain two things: (1) that the decisions on which the state relies are inapposite when the trial court, as it did it this case, identifies the relevant issue and rules on it and (2) that defense counsel was not "actively instrumental in bringing about" an alleged error, *State v. Brown*, 272 Or App 321, 324, 355 P3d 129 (2015), by declining to put forth a closing argument after the state also declined to do so.

who interrogated defendant and limited its questions solely to the circumstances of the *Miranda* warnings and the subsequent conversation about those warnings and whether defendant was willing to talk to the detectives.

Second, it is equally apparent that defendant did not concede the point. Instead, through cross-examination defendant established that the officers failed to ask the clarifying questions that are required following an equivocal invocation of the *Miranda* right to counsel. In other words, defendant developed the evidence to show that, if defendant's statement was an invocation, police did not proceed in the manner required. Defense counsel asked Rau whether he "had a decision to make how to respond" when defendant asked, "Where's the lawyer?" after defendant was asked whether he understood the rights that had just been read to him. That question tracks the familiar principle that requires that clarifying questions must be asked if there is an equivocal invocation and officers must decide how to proceed when faced with an equivocal invocation of the right to counsel. Defense counsel followed that question with two more: (1) "Did you ask him if he wished to delay the interview until he was appointed an attorney?" and (2) "Did you tell him he could delay the interview until he was appointed an attorney?" Both questions pointedly inquired whether the detective sought to clarify what defendant meant when he asked "Where's the lawyer?" If those questions were not sufficiently clear to reflect that defendant was not conceding that there had not been an invocation of counsel and, in particular, that an equivocal invocation required clarification— defense counsel asked, "When he said, yes, he understood his rights, did you clarify with him what he understood?"

Third, the record reflects that the parties were short on time and were deliberately cutting short their arguments in the interest of time, with the apparent understanding that all knew what the legal issue was. When the hearing resumed after a 10-minute recess, "in the interest of saving time," the state waived making an argument to the court that defendant's question to the detectives was not an invocation. Defense counsel declined to make an argument as well.

Fourth, the court expressly resolved the issue now presented by determining that defendant's statement was not an invocation of any sort, indicating that it understood the issue presented and the law that governed its resolution. The trial court confirmed the prosecutor's position when it asked if the state's position was that defendant's question "was not an invocation either equivocal or direct, obviously." Moreover, in the trial court's oral ruling, the court made findings about what was said in the interview, identified defendant's question—"Where's the lawyer?"—and determined that that question was not an invocation. One of the purposes of the preservation rule is to provide the trial court "the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples*, 345 Or at 219. Given the purpose of the *Miranda* hearing and the manner in which it was conducted, the court understood the obvious point of contention: Whether defendant invoked his right to counsel when he asked, "Where's the lawyer?"

As for the state's contention that, because defense counsel did not make an express closing argument (or otherwise assert an argument) to the court after the prosecutor declined to make one for the state, it was deprived of an opportunity to fully develop the record—that is, it would have introduced into the record the interview audio recording—we make three points.

First, the state sought the hearing on the admissibility of defendant's custodial interview and recognized that it was its burden to show that defendant's statements during the interview were voluntary. The state elected to meet that burden by questioning both detectives regarding the *Miranda* conversation they had had with defendant rather than by playing the recording.

Second, after defense counsel cross-examined Rau and asked the detective whether he had asked questions clarifying defendant's intent, the state had the opportunity to either conduct a redirect examination of Rau or play the recording. It did neither. Given that circumstance, it appears unlikely that additional argument by defense counsel would

have prompted the prosecutor (after stating that he wished to save time) to reopen the record for additional evidence when both detectives had already testified to the circumstances of the interview.

Third, even if we were to accept the state's contention that the prosecutor would have sought to reopen the evidentiary portion of the hearing to play the audio recording, we are not inclined to think that the recording would have aided the trial court or our review. That is, the state asserts that there were parts of the conversation not testified to by the detectives that indicated that defendant had waived his right to counsel.[5] However, if a suspect has equivocally invoked a right to counsel, then officers must follow up with questions to clarify the suspect's intent. If officers have not followed up with clarifying questions, as a general rule, there cannot be a valid waiver. *See State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998) (stating that, in the case of an equivocal invocation of the right to counsel where the police have followed up with clarifying questions, "the suspect may *thereafter* waive the right to have counsel present during that * * * interrogation" (emphasis added)).[6] We conclude below that defendant, at the very least, made an equivocal invocation of counsel, and the officers failed to clarify his intent. The state's assertion that defendant validly waived his right to counsel relies on a misunderstanding of the case law, as we explain below, 287 Or App at 628-29,[7]

_____

[5] Two of the statements that the state asserts were not testified to are defendant's question asking when he would get his attorney and Rau's question, "Are you willing to talk to us today?" Those areas of the conversation, however, were captured by the detectives' testimony.

[6] In *Meade*, the court held that, after an equivocal invocation of counsel, the defendant prevented the officers from following up with clarifying questions by launching into a monologue about substantive issues related to the alleged crime. 327 Or at 340-41. The state's position at trial was that there was no equivocal invocation of counsel.

[7] The state does not assert that the recording would have provided evidence of the demeanor of the officers or defendant such that it would inform the question of whether defendant invoked his right to counsel. *See Nichols*, 361 Or at 109 (explaining that the "totality of circumstances" evaluation of whether defendant made an unequivocal invocation "may include 'preceding words spoken by the defendant and the interrogating officer[;] the demeanor, gestures, and speech patterns of the defendant[;] the demeanor and tone of the interrogating officer[;] and the point at which the defendant allegedly invoked the right to remain silent'" (quoting *Avila-Nava*, 356 Or at 613-14). In any event, Rau described defendant's

and the portions of the interview that the state contends it did not get a chance to introduce as evidence do not inform the relevant determination.

Accordingly, the state was not procedurally disadvantaged by defense counsel's choice to forgo a closing argument when, shortly before the trial court's ruling, defense counsel had raised the issue during cross-examination and the issue was clearly understood by the trial court and the prosecutor. *See Peeples*, 345 Or at 220 (stating that procedural fairness to the parties and the trial court is the touchstone of the preservation rule). Given that pragmatic principle and the practical realities of this criminal pretrial hearing where the court had to resolve a host of legal and procedural issues (and, we note, where the prosecutor indicated the need to save time), the trial court is unlikely to be surprised by our conclusion that the appellate argument was preserved and subject to our review.

We turn next to the merits of defendant's appeal and set out the familiar principles governing the right to counsel during custodial interviews. The right to have an attorney present during interrogation is derived from the Article I, section 12, right against self-incrimination. *State v. Scott*, 343 Or 195, 200, 166 P3d 525 (2007). "[A] level of coercion is inherent in any custodial setting and * * * a lawyer's presence at a custodial interrogation is one way to ensure the right to be free from compelled self-incrimination." *Meade*, 327 Or at 339. For a person in custody, or in otherwise compelling circumstances, police provide *Miranda* warnings to protect that right. *State v. McAnulty*, 356 Or 432, 454, 338 P3d 653 (2014), *cert den*, ___ US ___, 136 S Ct 34 (2015). Such warnings serve to help ensure that any statement made by a person in custody is the product of the person's free choice and not the result of the inherently coercive nature of police custody. *See State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006) (citing *Miranda v. Arizona*, 384 US 436, 455-57, 86 S Ct 1602, 16 L Ed 2d 694 (1966)). Moreover, police must stop its interrogation when a person in custody unequivocally invokes the right against self-incrimination.

---

demeanor as "casual" and that there was not a "yelling match" or "finger pointing" during the interview.

*McAnulty*, 356 Or at 454. "The reason for that requirement is that, '[w]hen the police honor [a defendant's rights under Article I, section 12], if [the] defendant chooses to assert them, the coercive atmosphere of police interrogation is to some degree dispelled.'" *Avila-Nava*, 356 Or at 609 (quoting *State v. Sparklin*, 296 Or 85, 89, 672 P2d 1182 (1983)).

"When the defendant makes an ambiguous or equivocal invocation of rights under Article I, section 12, however, the police are required to ask follow-up questions to clarify what the person meant before proceeding with interrogation."[8] *Id.*; *see also State v. Charboneau*, 323 Or 38, 56, 913 P2d 308 (1996)) (noting that the officer asked "defendant a series of neutral questions to determine whether defendant wanted to speak with a lawyer" and that "those questions were directed only to whether defendant intended to invoke his right to counsel"); *State v. Montez*, 309 Or 564, 572-73, 789 P2d 1352 (1990) (noting that, after the defendant equivocally requested counsel, the officer's questions "intended only to clarify whether and to what extent defendant was invoking his right to counsel" and "did not probe beyond that limited and permissible inquiry").

"'Whether a request is an equivocal or unequivocal request for counsel depends on whether a reasonable officer would have understood that the suspect was invoking the right to counsel.'" *State v. Alarcon*, 259 Or App 462, 465, 314 P3d 364 (2013), *rev den*, 354 Or 838 (2014) (quoting *State v. Dahlen*, 209 Or App 110, 117, 146 P3d 359, *modified on recons*, 210 Or App 362, 149 P3d 1234 (2006)). "A statement that appears 'tenuous or equivocal in isolation may be a sufficient request for counsel when evaluated in the context of all of the circumstances.'" *State v. Brooke*, 276 Or App 885, 892, 369 P3d 1205 (2016) (quoting *State v. Wickey*, 95 Or App 225, 230, 769 P2d 208 (1989)); *see also Nichols*, 361 Or at 108-09 ("In ascertaining whether defendant made an unequivocal invocation, our task is to consider his words 'in the context of the totality of circumstances existing at the time of and preceding their utterance, to determine whether

---

[8] In contrast to Article I, section 12, the Fifth Amendment does not obligate officers to ask questions to clarify a suspect's intent in making an equivocal invocation. *See Avila-Nava*, 356 Or at 609 n 3 (citing *Davis v. United States*, 512 US 452, 461, 114 S Ct 2350, 129 L Ed 2d 362 (1994)).

a reasonable officer would have understood that the defendant was invoking that right.'" (Quoting *Avila-Nava*, 356 Or at 613.)).

In the event there is either an unequivocal invocation or an equivocal invocation that officers have followed with clarifying questions, "the suspect may thereafter waive the right to have counsel present during that or later interrogations" *Meade*, 327 Or at 339. The waiver must be, under the totality of the circumstances, knowing, intelligent, and voluntary. *McAnulty*, 356 Or at 455. The state bears the initial burden of showing that a defendant charged with a crime validly waived the right. *Nichols*, 361 Or at 107.

In this case, the parties dispute whether, during the custodial interview, defendant's question, "Where's the lawyer?"—a question posed to the detectives immediately after they asked defendant if he understood the *Miranda* rights that they had just read to him—was an equivocal invocation of his right to counsel. Defendant asserts that, at a minimum,[9] a reasonable officer would have understood his question as an equivocal request for counsel because of the context in which it was made—in direct response to Rau's question, "Do you understand each of the rights I've explained to you?" The state argues to the contrary because defendant "did not ask to speak to an attorney but merely asked where the lawyer was." Defendant could be understood, in the state's view, to be asking about a lawyer whom he had already contacted or asking when he would receive appointed counsel. As we will explain, we agree with defendant.

Viewed in the context of the totality of the circumstances preceding defendant's query, we readily conclude that, at a minimum, a reasonable officer would have understood that his question—"Where's the lawyer?"—was an equivocal invocation of the right to counsel. That is because defendant's question followed the Article I, section 12, right that had just been read to him: "You have the right to talk

---

[9] In a footnote of defendant's brief, he contends that a reasonable officer would have understood his question as an unequivocal invocation of his right to an attorney. However, as defendant neither develops that assertion nor explains how that assertion was preserved, we do not address it.

to a lawyer and have them present while you're being questioned." It is true that, if defendant's question were divorced from the context in which it was made, defendant's statement could be understood as the state suggests. That approach, however, does not comport with Oregon case law. *See Brooke*, 276 Or App at 896 (after considering in context the defendant's statement, "Can I call my mom? She's a lawyer," concluding that a reasonable officer would understand that the defendant telling officers that his mom was a lawyer meant that he wanted to call her in her capacity as a lawyer, and was therefore an unequivocal invocation of counsel); *Alarcon*, 259 Or App at 468 (concluding that, under the totality of the circumstances, an officer would have reasonably understood that the defendant's query about "when she could call a lawyer" was an invocation of her right to counsel).

Recently in *Nichols*, the Supreme Court emphasized the importance of applying a contextual approach to determining whether a statement is an invocation of the right to counsel. 361 Or at 111. In that case, the defendant, after initially waiving his right against compelled self-incrimination, said—"It's not something I want to talk about"—in response to a detective's request to discuss the circumstances surrounding the death of the defendant's girlfriend five years earlier. *Id.* at 102. The court acknowledged that, "when isolated from its context, defendant's statement plausibly could be construed" as a reluctance to talk about the circumstance of the victim's death. *Id.* at 110. However, the court found significant that the defendant's statement "went to the core of the investigation and the crime for which he had been arrested" and the defendant made his statement near the beginning of the interview and following a preliminary back and forth. *Id.* at 111-12. Thus, when the court considered the defendant's words "'in the context of the totality of circumstances existing at the time of and preceding their utterance, to determine whether a reasonable officer would have understood that the defendant was invoking that right,'" the court concluded that a "reasonable law enforcement officer should have understood that defendant was invoking his right against self-incrimination as to the entire interview." *Id.* at 108 (quoting *Avila-Nava*, 356 Or at 613), 111.

Consequently, applying that same contextual approach here, we conclude that, given that defendant's question ("Where's the lawyer") arose immediately after the officers asked defendant whether he understood his rights, at the very least, a reasonable officer would have understood that defendant may have been invoking his right to counsel. Therefore, the detectives were required to clarify whether defendant meant to assert that he had a right to a lawyer's assistance during the interview. *See Meade*, 327 Or at 339.

That conclusion requires us to determine if the exchange between defendant and the detectives following defendant's query "Where's the lawyer?" clarified whether defendant was invoking the right to counsel. The state asserts that, because it was unclear from defendant's question whether defendant was asking about a lawyer that defendant may have already retained or whether he was asking when he would receive court-appointed counsel, Rau satisfied his obligation to clarify defendant's intent by ascertaining that defendant had not retained a lawyer, informing defendant that he would receive court-appointed counsel in two days at defendant's arraignment hearing, and then asking if he would be willing to talk with the detectives. Further, the state argues that it was sufficient to ask defendant again whether he understood his rights.

We reject those arguments. The clarification that officers must obtain is whether a suspect intended to invoke the right to counsel derived from the right against self-incrimination under Article I, section 12. *See Charboneau*, 323 Or at 55-56 (the permissible inquiry was limited to the officer asking whether defendant was saying "that he wanted an attorney and did not want to talk with [officers] anymore" and, after the defendant said no, the officer again advised the defendant of his right to a lawyer); *Montez*, 309 Or at 568, 572-73 (asking the defendant if he was expressing that he wanted an attorney and no longer wanted to talk to the officers were neutral questions that did not go beyond the limited and permissible inquiry to clarify the defendant's equivocal invocation of counsel).

Here, by contrast, the detectives' questions did not clarify whether defendant intended to invoke his Article I,

section 12, right to counsel. The detectives' response, at most, clarified defendant's right to court-appointed counsel under the Sixth Amendment or Article I, section 11.[10] Moreover, once defendant equivocally invoked his right to counsel, just repeating the question whether defendant understood his rights is not sufficient. *See Alarcon*, 259 Or App at 469 ("[M]erely informing [the defendant] of the same rights that she had been aware of before her query regarding an attorney was not sufficient to clarify her intent."). Nor was it sufficient to ask defendant whether he was willing to talk to the officers, without clarifying that defendant had a right to have a lawyer assist him during the interview.

Indeed, not only was the detectives' follow-up an instance of failing to clarify what defendant meant—and, an instance of misdirection—the follow-up may have misled defendant into believing that he did not have a *Miranda* right to counsel during the interview. *See Miranda*, 384 US at 471 (holding that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today"). That is, defendant had a right under the Fifth Amendment and Article I, section 12, to have a lawyer present during the interrogation, *Miranda*, 384 US at 471, and *Scott*, 343 Or at 200, and the detectives' follow-up informing defendant that he would have counsel in two days and not at that present moment was affirmatively misleading to the extent it implied that defendant was entitled only to a lawyer's assistance at his arraignment in two days' time. *See United States v. Botello-Rosales*, 728 F3d 865 (9th Cir 2013) (holding that officer's warning in Spanish to the defendant that he was entitled to a "free" lawyer was properly translated as informing the defendant that his right to appointed counsel was "contingent on the approval of a

---

[10] Article I, section 11, of the Oregon Constitution provides, in part: "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." Article I, section 11, "mandates the appointment of counsel for all indigent defendants whose convictions may result in a loss of liberty." *Stevenson v. Holzman*, 254 Or 94, 104, 458 P2d 414 (1969). Similarly, the Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right * * * have the Assistance of Counsel for his defence."

request or on the lawyer's availability, rather than the government's absolute obligation" to provide counsel and, therefore, such an "affirmatively misleading advisory does not satisfy *Miranda*'s strictures").

The state also asserts that, if an invocation is equivocal, "the officer is permitted to, *but not required to*, ask clarifying questions." (Emphasis in the state's brief.) That is, citing *Meade*, the state argues that there are circumstances in which the state may prove a valid waiver when officers have not clarified whether a suspect intended to invoke the right to counsel. In the state's view, this case is one of those instances because defendant evinced a willingness to talk to the officers when he responded "Absolutely, yes" after the officers asked whether defendant was willing to talk to them. According to the state, defendant thereby voluntarily waived his *Miranda* rights. We disagree; this case is not a circumstance in which an officer's obligation to clarify the intent of a suspect's equivocal invocation was obviated.

In *Meade*, the defendant, having received *Miranda* warnings in a custodial interview, said that, if he needed a lawyer, he wanted one. 327 Or at 337. Before the detectives had the opportunity to say anything further, the defendant "leaned forward in his chair, put up his hands as if to stop the detectives from speaking, and said, 'You've talked a lot. I want to say a few things.'" The defendant then initiated a discussion with the detectives. *Id.* The Supreme Court held that, because the defendant's "physical gestures cut off further questions by the officers," the defendant "asserted control over the conversation," and the defendant "initiated further conversation that evinced a willingness and a desire for a generalized discussion about the investigation," the interviewing officers "had no obligation to inquire further." *Id.* at 341. That is, an "officer's duty to clarify a suspect's equivocal invocation may be obviated if the suspect initiates further substantive conversation concerning the investigation before the officer has clarified the suspect's intent." *State v. Holcomb*, 213 Or App 168, 174, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (citing *Meade*, 327 Or at 340). In this case, however, defendant neither "cut off" the detectives from asking clarifying questions (as evidenced by their questions that did not clarify whether defendant intended to invoke

his Article, I, section 12, right to counsel) nor did defendant *initiate* conversation with the detectives. Rather, defendant *responded* affirmatively when asked if he was willing to talk to the officers. "[P]olice are *required* to ask follow-up questions to clarify what the person meant before proceeding with interrogation" if the person equivocally invokes his right to counsel under Article I, section 12. *Avila-Nava*, 356 Or at 609 (emphasis added). The state's argument asserting otherwise is not well founded, and this is not a circumstance in which a suspect's conduct obviates the requirement of officers to clarify a defendant's intent.

Our conclusion also requires us to determine whether the admission of defendant's statements was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (under Article VII (Amended), section 3, of the Oregon Constitution, a reviewing court affirms trial court error if there is "little likelihood that the particular error affected the verdict"). "Our analysis turns on the possible influence that those statements had on the verdict and not whether proof of defendant's guilt was compelling even without the statements." *State v. Cazarez-Hernandez*, 280 Or App 312, 318, 381 P3d 969 (2016) (citing *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009)). Defendant, asserting that defendant's statements were among the "most incriminating pieces of evidence linking" him to the victim's death, argues that the trial court's erroneous admission of defendant's statements made during interrogation was not harmless. The state does not assert otherwise. We conclude that, on this record, the trial court's erroneous admission was not harmless.

Reversed and remanded.