JAMES, J.
*603 Defendant appeals from a judgment of conviction for one count of manslaughter in the first degree with a firearm, ORS 163.118. He assigns error to the trial court's denial of his motion to suppress statements made following his invocation of the right to counsel under Article I, section 12, of the Oregon Constitution. At issue on appeal is whether, after defendant invoked his right to counsel, the interrogating detectives unconstitutionally continued to question him in violation of Article I, section 12. We agree with defendant that his invocation was, at the very least,[1] equivocal. Further, we determine that the detectives did not permissibly clarify defendant's invocation, that the encounter was ongoing such that defendant's later statements cannot be considered a waiver of his previously invoked right to counsel, and that defendant's subsequent responses did not amount to further initiation of the conversation. Additionally, this error was not harmless, because it had more than a little likelihood of influencing the jury's verdict. Accordingly, we reverse and remand.
"What transpired during a custodial interrogation, including what a defendant said or did not say, is a question of fact." State v. Avila-Nava , 356 Or. 600, 609, 341 P.3d 714 (2014). We are bound by the trial court's findings of historical fact if evidence in the record supports those findings, although we assess anew whether [those] facts suffice to meet constitutional standards." Id . (internal quotation marks omitted). However, "whether a defendant's statements amounted to an unequivocal invocation of the right against self-incrimination, an equivocal invocation, *1105 or no invocation at all, is a question of law." Id . We review such "legal conclusions regarding the invocation of the right to counsel for legal error." State v. James , 339 Or. 476, 481, 123 P.3d 251 (2005). We state the facts in accordance with that standard.
Defendant was arrested in Las Vegas, Nevada, by United States Marshalls on the suspicion that defendant *604 had murdered his cousin a month earlier in Multnomah County. Detectives Snider and Crate traveled to Las Vegas from Oregon to interview defendant and execute a warrant for defendant's arrest. The two detectives sat down with defendant in an interview room. Snider began the interview by telling defendant he was in custody. He then gave defendant his Miranda warnings. Defendant responded that he understood his rights.
Defendant, Snider, and Crate talked generally for a while and defendant initially denied being at the apartment complex at the time his cousin was shot. Crate told defendant that the police had surveillance video of him running from the apartment complex after the shooting. Defendant asked to see the video and Crate responded that the detectives did not have the video with them. Instead, Crate drew a map of the area for defendant and explained what the video captured. Crate told defendant the following:
"[CRATE]: And when you and when you start walking along you're actually walking in the road in the bicycle lane not on the curb [throat clearing] you guys drop something okay and then you go bound to pick it up and then [friend] does the same thing and you go like this [vocal sound] right across 181st Avenue. [throat clearing] Okay so we're not bullshitting you when we tell you that this is what's going on because these people have talked already okay 'cause they don't wanna be involved in this okay. Yes it's an accident they told us that that's what happened. They said Brandon didn't [unintelligible] he wasn't going there to murder this guy. Some shit happened, Tito was running his mouth, putting ya on blast and it pissed ya off."
As it appears in the original recording transcript, defendant responded, "Well can I, I, I really don't wanna say too much [unintelligible] I would rather have my lawyer with me but." At which point Snider interrupts defendant, cutting him off by saying that was "completely [his] right."[2] Snider continued:
*605 "[SNIDER]: And if that's the way you wanna go with it then that's the way we play it. We came here to try to get your side of it though because we believe that there's more to it.
"[DEFENDANT]: Okay then.
"[SNIDER]: We talked about a pistol whipping and stuff like that, there's something going on."
After Snider's statements to defendant, the three men began to speak simultaneously and defendant proceeded to make incriminating statements to the detectives. Eventually, Snider and defendant had the following exchange:
"[SNIDER]: And I wanna make sure that you're clear I, it's you're obviously clear that you know your rights and that you have [vocal sound] you have a right to one [lawyer] because you've already been talking about it you know throughout the throughout our conversation but I wanna make sure that we, we can continue and you know that you don't or you, you say that you don't want an attorney now.
"[DEFENDANT]: No I didn't say I never said I don't want an attorney I said I would like to speak to my attorney because at the same time I don't want to I don't wanna incriminate myself on any more things that."
The parties' arguments at trial and on appeal are much the same. On appeal, the parties agree that defendant's statement was, at the very least, an equivocal invocation of the right to counsel. Defendant argues that the trial court erred in denying his motion to suppress incriminating statements, because the detectives did not ask permissible clarifying questions and, instead, continued to interrogate defendant in violation of *1106 Article I, section 12, of the Oregon Constitution. The state argues that the trial court ruled correctly, because defendant's incriminating statements resulted from defendant's voluntary waiver of his previously invoked right to counsel and his further initiation of conversation with the detectives. Moreover, the state argues that, even if there was error, admitting the statements was harmless.
Article I, section 12, states, in part, that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself" and protects a suspect's right against *606 self-incrimination and his derivative right to counsel. State v. Sanelle , 287 Or.App. 611, 617, 404 P.3d 992 (2017). The right to counsel during interrogation and the right to silence are derivative of the broader right against compelled self-incrimination. State v. Scott , 343 Or. 195, 199-200, 166 P.3d 528 (2007). Article I, section 12, applies to custodial interrogation, or when a person is "in circumstances that create a setting which judges would and officers should recognize as compelling." State v. Roble-Baker , 340 Or. 631, 638, 136 P.3d 22 (2006) (internal quotation marks omitted).
"A suspect's invocation of his Article I, section 12, rights in those circumstances triggers a binary decision tree for law enforcement." State v. Schrepfer , 288 Or.App. 429, 436, 406 P.3d 1098 (2017). "The question is whether the invocation was equivocal or unequivocal, which we determine by considering 'the defendant's words, in light of the totality of the circumstances at and preceding the time they were uttered, to ascertain whether a reasonable officer would have understood that the defendant was invoking that right.' " Id. We consider a suspect's words in context, including the preceding words of the suspect and the interrogating officer, the suspect's demeanor, gestures, and speech pattern as well as the demeanor and tone of the interrogating officer up to and until the suspect invoked the right against compelled self-incrimination. Avila-Nava , 356 Or. at 614, 341 P.3d 714.
An unequivocal invocation triggers only one permissible response: interrogation must immediately stop. State v. Boyd , 360 Or. 302, 318, 380 P.3d 941 (2016). When the invocation is equivocal, assuming the police do not choose to cease interrogation entirely, again, there is only one permissible response: "the police are required to ask follow-up questions to clarify" the equivocal nature of the suspect's statement." Avila-Nava , 356 Or. at 609, 341 P.3d 714. As we recently reiterated in Schrepfer , "[a]ny questioning not reasonably designed to clarify the equivocal nature of the statement is impermissible." Schrepfer , 288 Or.App. at 436, 406 P.3d 1098.
In this case, the parties agree that, at the very least, defendant equivocally invoked his right to counsel. The only permissible response by Snider or Crate following defendant's equivocal invocation would have been to ask neutral *607 follow-up questions intended to clarify the equivocal nature of defendant's statement. As we have previously made clear, "merely informing [a suspect] of the same rights that [the suspect] had been informed of before [the suspect's] query regarding an attorney was not sufficient to clarify [the suspect's] intent." State v. Alarcon , 259 Or.App. 462, 469, 314 P.3d 364 (2013). Here, Snider "clarified" defendant's equivocal invocation of the right to counsel by responding, "[t]hat's completely your right." In keeping with Alarcon , merely parroting back the same right defendant attempted to invoke does not sufficiently clarify defendant's intent and, thus, does not qualify as a permissible response to defendant's equivocal invocation. See generally Alarcon , 259 Or.App. at 468, 314 P.3d 364.
Despite an earlier Article I, section 12, violation, a suspect still retains the power to validly waive the right against compelled self-incrimination "as long as that waiver is knowing, intelligent, and voluntary under the totality of the circumstances." State v. McAnulty , 356 Or. 432, 455, 338 P.3d 653 (2014). "We exercise all presumptions against the waiver of constitutional rights." Schrepfer , 288 Or.App. at 437, 406 P.3d 1098. The burden of showing that a defendant validly waived the right against compelled self-incrimination after invocation falls to the state. Sanelle , 287 Or.App. at 625, 404 P.3d 992.
*1107 There are two ways in which the state can show a defendant validly waived his previously invoked rights. First, the state can show that the officers reinitiated conversation after they waited a reasonable length of time, re-Mirandized the suspect, and the suspect, in turn, indicated a willingness to talk about the investigation. Avila-Nava , 356 Or. at 617-18, 341 P.3d 714 ; McAnulty , 356 Or. at 456-57, 338 P.3d 653. Second, the state can show that the suspect initiated conversation with the officers by making unprompted statements that indicated a willingness to have a generalized discussion regarding the substance of the charges or investigation. McAnulty , 356 Or. at 456-57, 338 P.3d 653 ; State v. Acremant , 338 Or. 302, 323, 108 P.3d 1139, cert. den. , 546 US 864, 126 S.Ct. 150, 163 L.Ed.2d 148 (2005). Although, if a suspect asks more generalized questions about why the suspect has been taken into custody, those conversations do not suffice to establish a voluntary waiver of a previously invoked right. Boyd , 360 Or. at 318, 380 P.3d 941.
*608 Lastly, when we determine whether a defendant's reinitiation of conversation indicates a true voluntary waiver of the right against self-incrimination, as opposed to simply being the product of a police-dominated atmosphere, this court considers such "relevant factors * * * includ [ing] the nature of the initial [invocation and] violation, the amount of time between the violation and the [suspect's] later statements, whether the [suspect] remained in custody between the violation and the later statements, and whether there was a change in time and circumstances." McAnulty , 356 Or. at 457-58, 338 P.3d 653 (citing State v. Jarnagin , 351 Or. 703, 716-17, 277 P.3d 535 (2012) ).
In this case, the nature of defendant's invocation and the amount of time between defendant's invocation and the impermissible response from Snider neither indicates a change in time nor indicates a change in circumstance enough to determine a truly valid waiver of defendant's invoked right. Specifically, after defendant stated he would rather have his lawyer there, Snider responded that that was defendant's right. What followed was six seconds of silence. Eventually, Snider broke the silence and stated that "if that's the way you wanna go with it then that's the way we play it. We came here to try to get your side of it though because we believe that there's more to it." This statement amounted to Snider's continued impermissible interrogation and violation of defendant's invoked right. Moreover, Snider's statement, rather than clarify if defendant invoked his right to counsel, prompted defendant's incriminating statement that the shooting was "an accident." There was neither a break in time nor a change in circumstance, and defendant's incriminating statements were prompted by Snider's continued impermissible interrogation. Therefore, we reject the state's argument that defendant waived his previously invoked right to counsel by reinitiating conversation with Snider in a way that evinced defendant's willingness and desire for generalized discussion regarding the investigation. State v. Meade , 327 Or. 335, 341, 963 P.2d 656 (1998).
Additionally, we must determine whether admitting an audio recording of defendant's interrogation was harmless. "Our analysis turns on the possible influence that *609 those statements had on the verdict and not whether proof of defendant's guilt was compelling even without the statements." Sanelle , 287 Or.App. at 630, 404 P.3d 992. Thus, "when we review the record, we do so in light of the error at issue [and we] ask whether there was little likelihood that the error affected the jury's verdict." State v. Holcomb , 213 Or.App. 168, 183, 159 P.3d 1271 (2007) (quoting State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) ).
Here, defendant's admission that his cousin's shooting was an accident supported the state's theory that defendant, not someone else, did in fact shoot his cousin and that it was defendant's gun that accidentally went off when he pistol whipped his cousin across the face. Moreover, one of defendant's proffered defense theories was that someone else, not defendant, shot his cousin during a nearby gang confrontation. To admit defendant's incriminating statement that the shooting was an accident cannot be considered harmless in light of the fact that "[a] defendant's direct admission bears an important *1108 relationship to a jury's determination of its verdict." State v. Shaff , 209 Or.App. 68, 76, 146 P.3d 389 (2006), rev'd on other grounds , 343 Or. 639, 175 P.3d 454 (2007). Accordingly, we cannot conclude that there was little likelihood that the erroneously admitted interrogation audio recording did not affect the verdict.
Reversed and remanded.

The parties did not argue on appeal that defendant's invocation was unequivocal and, thus, we do not reach that question. Our opinion should not be read to foreclose that possibility.

We emphasize that the parties characterize this as an equivocal invocation and, thus, our analysis tracks the parties' arguments on that point. We express no opinion on whether the invocation in this case could also be categorized as unequivocal.