Argued and submitted February 24, 2020, reversed and remanded
June 23, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELISEO TELLEZ-SUAREZ,
*Defendant-Appellant.*

Washington County Circuit Court
17CR50926; A168105

493 P3d 28

Defendant appeals from judgments of conviction for one count of first-degree unlawful sexual penetration, ORS 163.411, and three counts of first-degree sexual abuse, ORS 163.427, raising six assignments of error. He asserts that the trial court erred in admitting the video of his interview with the police despite his alleged invocation of counsel. The state concedes that pursuant to *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the trial court plainly erred by entering convictions based upon nonunanimous jury verdicts. *Held*: Because defendant did not invoke his right to counsel, the trial court did not err in admitting the video of his interview with the police. Additionally, the state's concession pursuant to *Ramos* was appropriate.

Reversed and remanded.

Janelle F. Wipper, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Beth Andrews, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General and Michael A. Casper, Assistant Attorney General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

Defendant appeals from judgments of conviction for one count of first-degree unlawful sexual penetration, ORS 163.411, and three counts of first-degree sexual abuse, ORS 163.427, raising six assignments of error. We reject defendant's second assignment without discussion. In his third and fourth assignments, defendant challenges his convictions by nonunanimous verdicts. The state concedes that defendant's convictions reflect a nonunanimous jury verdict on each count, and, accordingly, we must reverse and remand pursuant to *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We accept the state's concession, reverse and remand all counts, and our resolution obviates the need to address defendant's fifth and sixth assignments of error. However, we write briefly to address defendant's first assignment of error, which implicates an issue that may arise on remand, wherein defendant contends that the trial court erred in admitting the video of his interview with the police despite his invocation of counsel. We conclude the trial court did not err on this issue.

The facts giving rise to the charges of this case surround incidents of alleged sexual abuse occurring between late 2015 and late 2016. During this time span, M, the alleged victim, was nine and 10 years old and was living with her mother, her stepfather (defendant), and various siblings, half-siblings, and stepsiblings.

In November of 2016, M told her mother that "she no longer wanted to live with [defendant] because he had done bad things to her." At a subsequent counseling session for M's sister later that month, mother told the counselor what M had said, prompting a report to the Department of Human Services and law enforcement. M later described the abuse in more detail to a CARES examiner, stating that the abuse had started approximately one year earlier, and she described different instances—"five or ten times"—in which defendant had touched her sexually.

Those allegations prompted an interview at a police department on December 8, by Detective Schwartz. Because defendant spoke Spanish, Officer Cabrera, a native Spanish speaker, attended the interview as an interpreter. The

interview was recorded on video, and portions were played for the court at trial. Schwartz explained to defendant that the room's audio and video were being recorded such that their "words are taken exactly how [they] say them." She also told defendant, "You don't have to talk to me if you don't want to. The door is unlocked. Okay? And if you want to end our conversation at any time, you just need to let me know that. Okay?"

Defendant was read his *Miranda* rights in Spanish, not interpreted but rather "[v]erbatim from a pre-prepared card." There is some minor uncertainty regarding what precisely was said at that point. The video was played at trial, which the trial transcript before us translates as, "Do you have any questions about that before we start?" Defendant replied, "I don't have a lawyer right now, but let's continue."[1]

After this exchange, Schwartz next stated, "Okay. Great. Okay. So how would you describe your relationship with [mother]?" She proceeded to interview defendant about his home life. During the remainder of the interview, defendant denied touching M inappropriately, even when Schwartz told him that she had talked to M and believed the child's story.

Before trial, defendant objected to the admission of the interview and moved to suppress it, arguing that he had made an equivocal invocation of his right to counsel after being informed of his *Miranda* rights and stating, "I don't have a lawyer right now, but let's continue," and that the officers had violated his rights by failing to clarify whether he had indeed invoked. At the motion hearing, the trial court first found that it was "abundantly clear" that "[d]efendant gave an equivocal invocation here, and that the Court is required to look at the totality of the circumstances." It noted that, "if [defendant] had just said, 'I don't have a lawyer,' the officer[s] would have been required to ask follow-up

---

[1] Defendant accepts this translation. Because Cabrera and defendant were speaking simultaneously, there are indiscernible passages—including part of the sentence in which defendant refers to a lawyer. In his testimony, Cabrera also testified to his interpretation of what was on the video, and it varies in some respects from the transcript of the video. Because defendant has not challenged the accuracy of the interpretation and transcription of his statement that "I don't have a lawyer right now, but let's continue[,]" we rely on that interpretation.

questions." But because defendant followed that statement with "but let's continue," the court determined that it would be reasonable for the officers to understand that they were free to continue the interview. Ultimately, the trial court denied the motion to suppress, a nonunanimous jury found defendant guilty, and this appeal ensued.

We review the denial of a motion to suppress for errors of law. *State v. Woodall*, 181 Or App 213, 217, 45 P3d 484 (2002). We defer to the factual findings of the trial court—including what transpired during a custodial inter-rogation and what a defendant did or did not say. *State v. Avila-Nava*, 356 Or 600, 609, 341 P3d 714 (2014). However, we assess anew whether those facts suffice to meet constitu-tional standards. *State v. James*, 339 Or 476, 481, 123 P3d 251 (2005). In other words, whether a defendant's statement was not an invocation or was an invocation and, if an invo-cation, whether it was an equivocal or unequivocal invoca-tion are questions of law. *Avila-Nava*, 356 Or at 609; *State v. Terry*, 333 Or 163, 172, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002). Whether a defendant reinitiated further conver-sation after an invocation is also a question of law. *State v. Meade*, 327 Or 335, 341-42, 963 P2d 656 (1998).

Article I, section 12, of the Oregon Constitution states, in part, "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." That con-stitutional guarantee protects a person's right against com-pelled self-incrimination. *Avila-Nava*, 356 Or at 608; *State v. Sanelle*, 287 Or App 611, 617 n 2, 404 P3d 992 (2017), *rev den*, 362 Or 482 (2018). Both the right to counsel during interrogation and the right to silence are derivative of that broader right. *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007); *Sanelle*, 287 Or App at 617. Article I, section 12, applies to an interrogation when a person is in custody or "in circumstances that [would] create a setting which judges would and officers should recognize [as] compelling." *State v. Roble-Baker*, 340 Or 631, 638, 136 P3d 22 (2006) (quoting *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (internal quo-tation marks omitted)).

The threshold question in an issue of compelled self-incrimination is whether the suspect invoked their rights

at all. As has been noted, "courts have developed no simple, clear test for determining whether a suspect's oral reference to a need for legal advice during a police interview amounts to an invocation of the right to counsel." *Meade*, 327 Or at 344 (Durham, J., dissenting). But, generally, an adequate invocation to the right to counsel is "any plain reference, however glancing, to a *need* or *desire* for representation." *State v. Wickey*, 95 Or App 225, 230, 769 P2d 208 (1989) (quoting *Connecticut v. Barrett*, 479 US 523, 534, 107 S Ct 828, 93 L Ed 2d 920 (1987) (Brennan, J., concurring) (emphases added)). However, "a mere reference to an attorney" does not necessarily mean a suspect has invoked their right to counsel. *State v. Brooke*, 276 Or App 885, 892, 369 P3d 1205 (2016). The mere mention of an attorney, disconnected from the need or desire for representation, may be no invocation at all, depending on the contextual circumstances of the interrogation.

An invocation has occurred, and occurred unequivocally, when "the suspect expresses a clear intent to invoke his or her rights." *State v. Roberts*, 291 Or App 124, 132, 418 P3d 41 (2018). In contrast, an invocation has occurred, but equivocally so, when "the suspect's statement or request is subject to more than one reasonable interpretation, one of which is that he or she is invoking the right to counsel." *Id*.

In determining whether there was an invocation at all, and if so, whether it was equivocal or unequivocal, we look to "the defendant's words, in light of the totality of the circumstances at and preceding the time they were uttered, to ascertain whether a reasonable officer would have understood that the defendant was invoking that right." *Avila-Nava*, 356 Or at 612. We consider a suspect's words in context, including the preceding words spoken by the suspect and the interrogating officer; the demeanor, gestures, and speech patterns of the suspect; the demeanor and tone of the interrogating officer; and the point at which the suspect allegedly invoked the right against self-incrimination. *Id*. at 614; *see also State v. Nichols*, 361 Or 101, 109, 390 P3d 1001 (2017).

When a suspect has invoked his rights, that "triggers a binary decision tree for law enforcement." *State v. Schrepfer*, 288 Or App 429, 436, 406 P3d 1098 (2017). If

the invocation is unequivocal, there is but a single lawful response: interrogation must immediately cease. *State v. Boyd*, 360 Or 302, 318, 380 P3d 941 (2016). When the invocation is equivocal, law enforcement can either terminate the interrogation entirely, or may ask "neutral follow-up questions intended to clarify the equivocal nature of [the] defendant's statement." *State v. Hickman*, 289 Or App 602, 606-07, 410 P3d 1102 (2017). "Any question not reasonably designed to clarify the equivocal nature of the statement is impermissible." *Roberts*, 291 Or App at 133. "That means that the questions following an equivocal invocation of the right to counsel must clarify specifically whether the suspect had intended to invoke *that* right, not other rights such as the right against compelled self-incrimination or the right to court-appointed counsel under Article I, section 11." *State v. Joaquin*, 307 Or App 314, 321, 476 P3d 1263 (2020) (emphasis in original).

Finally, "a suspect's own actions may, in a given case, eliminate any need for clarification by the officers." *Meade*, 327 Or at 340. "An officer's duty to clarify a suspect's equivocal invocation may be obviated if the suspect initiates further substantive conversation concerning the investigation before the officer has clarified the suspect's intent." *State v. Holcomb*, 213 Or App 168, 174, 159 P3d 1271, *rev den*, 343 Or 224 (2007). "Thus, after an equivocal invocation, a suspect can waive his rights by reinitiating substantive conversation with the officers in a manner that evidences a willingness and a desire for a generalized discussion about the investigation." *Id.* (internal quotation marks and citation omitted). This waiver can be full, or partial. A person can "partially waive the right against compelled self-incrimination by voluntarily discussing certain aspects of an investigation, but at the same time selectively invoke the right by refusing to discuss other aspects of the investigation." *Id.* (citing *State v. Kell*, 303 Or 89, 94, 734 P2d 334 (1987)).

We turn now to applying these principles in the context of this interrogation. We note at the outset that there is no dispute here that defendant was in custody during the interview and was properly *Mirandized* in his native language. It is also undisputed that defendant understood his rights, as he acknowledged in the interview. We thus next

ask if defendant *in any way* invoked his right to counsel. Here, the parties spend significant energy debating exactly how we should parse defendant's statement. Though both parties agree that defendant's preceding words can be considered in our analysis of invocation, defendant argues that we may *only* look at the preceding words and circumstances, and not *subsequent* ones. In essence, defendant argues that he made two complete, independent, statements: (1) "I don't have a lawyer right now" and (2) "let's continue." He thus argues that the focus of the inquiry is limited to defendant's statement, "I don't have a lawyer right now," and may not include the "let's continue" that followed. We disagree.

An accused's "post-request responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself"; however, "'[e]vents preceding the [response]' or 'nuances inherent in the [response] itself' can evince ambiguity and justify the conclusion that an accused's response was equivocal." *Avila-Nava*, 356 Or at 612 (quoting *Smith v. Illinois*, 469 US 91, 100, 105 S Ct 490, 83 L Ed 2d 488 (1984) (brackets in *Avila-Nava*)). In *Avila-Nava*, the Oregon Supreme Court noted that other state courts, making a comparable Fifth Amendment invocation analysis, found no invocation "when what might otherwise be deemed to be an unequivocal invocation was *immediately and spontaneously followed by words that were inconsistent with a desire to remain silent.*" *Id.* at 612 n 7 (emphasis added). Thus, for example, there was no unequivocal invocation "when words expressing a desire to end questioning were 'separated by little more than a breath' from subsequent utterances that would lead a reasonable officer to doubt whether the defendant in fact wished to do so." *Id.* (internal citation omitted).

In the present case, nothing interrupted the first part of defendant's statement, "I don't have a lawyer right now," from the latter "but let's continue." No appreciable length of time passed between these two clauses, nor was defendant interrupted by anyone between the two utterances. In other words, the clauses were "separated by little more than a breath," and thus the entire sentence must be considered as one statement.

The parties and the trial court appear to have begun with the proposition that defendant's statement was an equivocal invocation of counsel. The trial court then went on to consider this case under the waiver theory. However, we conclude that the proper conceptualization of defendant's statement was that it was no invocation at all.

To determine whether a *Mirandized* defendant making a statement has invoked his right to counsel in a custodial interrogation, we must ascertain whether a "reasonable officer in the circumstances" would have understood that defendant was invoking his rights. *State v. Dahlen*, 209 Or App 110, 117, 146 P3d 359, *modified on recons*, 210 Or App 362, 149 P3d 1234 (2006). Here, as a means of explanation, had defendant said, "I don't *want* a lawyer right now, but let's continue," the mere mention of the word "lawyer" would not transform that sentence to an invocation of counsel. Rather, it is the opposite; it is a rejection, not an invocation, of the right. Defendant's actual phrase here, "I don't *have* a lawyer right now, but let's continue," is, ultimately, no more of an invocation.

In *Holcomb*, in analyzing the defendant's statement, "I have an attorney an[d] shit," we concluded that statement was, "at best" an equivocal invocation. 213 Or App at 180 (brackets in original). There, we determined that a reasonable officer would not have understood that the defendant was invoking his right to counsel because the defendant "merely stated that he had an attorney; he did not say that he wanted to terminate the interview or refuse to answer questions without his attorney being present." *Id.*

Defendant's statement here similarly would not place a reasonable officer on notice that defendant was invoking his right to counsel. The context surrounding the statement is significant because "[a] statement that may appear tenuous or equivocal in isolation may be a sufficient request for counsel when evaluated in the context of all of the circumstances." *Wickey*, 95 Or App at 230. Thus, in analyzing a putative invocation, we should consider "the preceding words spoken by the defendant and the interrogating officer, the demeanor, gestures, and speech patterns of the defendant, the demeanor and tone of the interrogating officer, and the

point at which the defendant allegedly invoked the right to remain silent." *Avila-Nava*, 356 Or at 614.

When that statement is taken in its entirety and in the context of the preceding conversation ending with "Do you have any questions about that before we start?" no reasonable officer would assume that defendant was invoking his right to counsel. The words are not ambiguous enough to cause any uncertainty that might warrant clarification on the part of the officers. As in *Holcomb*, defendant "merely stated" that he did not have an attorney, but "did not say that he wanted to terminate the interview or refuse to answer questions without his attorney being present." 213 Or App at 180. He did not ask any questions. Rather, he explicitly expressed his desire to "continue" with the interrogation in the way things were at present—without an attorney.

Furthermore, defendant's "demeanor, gestures, and speech patterns," as well as "the demeanor and tone of the interrogating officer[s]" both support this conclusion. *Avila-Nava*, 356 Or at 614. At the very outset of the interview, before reading the *Miranda* rights, the officers informed defendant that he did not have to speak to them, that he was free to leave, and that if he wanted to end the conversation at any time, he simply needed to let them know. Each officer's tone was calm and far from hostile or threatening. In the video of the interview, defendant can be seen listening and nodding in understanding during this explanation. Defendant again nodded in understanding when read his *Miranda* rights and asked if he understood them. His subsequent statement, "I don't have a lawyer, but let's continue," was accompanied by nodding, implying that he understood that he had a right to a lawyer but had decided he wanted to continue with the questioning. "Every case necessarily turns on its own facts." *Meade*, 327 Or at 340. Here, in the context of this interrogation and this defendant, viewing defendant's statement in that totality, we conclude he did not invoke his right to counsel, and the trial court did not err in denying the motion to suppress. However, as previously discussed, we reverse and remand defendant's convictions based on the nonunanimous verdicts.

Reversed and remanded.